Revised July 30, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 98-30309

---

HERMAN FIELDS,

Plaintiff-Appellant,

versus

POOL OFFSHORE, INC.; ET AL.,

Defendants,

POOL COMPANY, incorrectly sued
as Pool Offshore, Inc.,

Defendant-Appellee.

---

Appeal from the United States District Court for the
Eastern District of Louisiana

---

July 27, 1999

Before GARWOOD, BARKSDALE and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Herman Fields (Fields) brought a seaman's complaint for damages in state court, alleging negligence under the Jones Act, 46 U.S.C. App. § 688, and the general maritime law. Defendants-appellees Pool Company (Pool) and Oryx Energy Company (Oryx) (collectively defendants) removed the case to federal court.

Fields' motion to remand was denied, and the district court granted summary judgment on behalf of Pool (but not Oryx). This partial summary judgment was then certified under Rule 54(b) and Fields appealed. We affirm.

**Facts and Proceedings Below**

A spar is a nautical structure designed to float with the bulk of the hull below the waves—something akin to a giant buoy. As United States petroleum resources have dwindled, innovative production companies have attempted to exploit oil and gas resources in deeper ocean waters. In an attempt to economically extract petroleum from one of its deep water fields—located in the Visosca Knoll area of the outer continental shelf about one hundred miles off the Alabama coast—Oryx decided to design a production platform based around a spar. Oryx's Neptune Spar—which is apparently the first structure of its kind to be deployed off of our coast—consists of a cylinder with a diameter of seventy-two feet, and a length of seven hundred five feet. The section that pokes above the surface has a production deck attached to it and contains crew quarters, bilge pumps, life boats, and production facilities.

The Neptune Spar was installed at its current location in the Visosca Knoll area in September 1996. The Neptune Spar is anchored above the field's seven well heads by six chain wire lines which connect to six pilings driven one hundred eighty feet into the

seabed. In addition, the structure is further fixed in place by the network of pipes used to extract and transfer the petroleum. A casing riser extends from each of the seven well-heads to the spar, and two pipelines transport the spar's product away from the location. The Neptune Spar has no organic means of propulsion. By tightening and slackening the six chains, the spar can be maneuvered to position it closer to a particular well-head, but such movement is only possible within a two hundred fifty foot range. According to affidavits in the record, this is the Neptune Spar's initial location and it will remain thus fixed in place there until the petroleum resources beneath it are exhausted, an event that is not predicted to occur for at least fifteen years.

Fields was an employee of Pool who worked as a roughneck/derrickhand on Pool's platform drilling "rigs." These rigs are packages of drilling equipment that are moved from location to location as needed. Fields was permanently assigned to rig no. 908, but when that rig was taken out of service he was assigned to rig no. 10. Oryx contracted for the services of rig no. 10, and arranged for its transport to the Neptune Spar. On February 20, 1997, while working on this rig aboard the Neptune Spar, a section of the rig unexpectedly struck Fields in the head. This accident allegedly caused "serious and permanent injuries to" Fields' "face, central nervous system and brain . . . resulting in his permanent disability." Fields is a citizen of Mississippi; Pool is a Texas corporation with its principal place of business in

Texas; Oryx is a Delaware corporation with its principal place of business in Texas.

On August 27, 1997, Fields filed the instant seaman's complaint in Louisiana state court, alleging negligence and invoking the Jones Act and the general maritime law. On October 8, 1997, the defendants filed a notice of removal on the basis of diversity of citizenship and, alternatively, under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq*. They alleged that Fields' Jones Act claim was fraudulently pled to defeat removal jurisdiction in that Fields was not a Jones Act seaman and had no substantial connection to any vessel and the Neptune Spar was a fixed platform, not a vessel. On November 8, 1997, Fields filed a motion to remand, arguing that removal was precluded by the Jones Act, that Fields was a seaman and that the Jones Act claim had not been fraudulently pled. *See* 28 U.S.C. § 1445(a). Defendants filed an opposition to the motion on November 25, 1997, and, in an order dated December 5, 1997, the district court rejected Fields' motion to remand, holding that as a matter of law the Jones Act claim was baseless as Fields was not a seaman and the Neptune Spar was a fixed platform, not a vessel. On that same day, Fields filed a motion requesting fifteen days' leave to respond to defendants' response to Fields' motion to remand. This motion was dismissed as moot. On December 16, 1997, Pool moved for summary judgment, arguing that, since Fields was Pool's employee

4

and was not a Jones Act seaman and the Neptune Spar was a fixed platform on the outer continental shelf, OCSLA, 43 U.S.C. § 1333(b), limited Fields' remedies against Pool to compensation under the Longshore and Harbor Workers' Compensation Act ( LHWCA), 33 U.S.C. § 905. Oryx did not join in the motion. Fields responded by claiming that material facts were in dispute regarding the Neptune Spar's potential vessel status and also moving for a new trial and/or rehearing of the court's prior determination that the Neptune Spar was not a vessel as a matter of law. On February 3, 1998, the district court granted summary judgment in favor of Pool and denied Fields' motion for new trial or rehearing. Fields moved for Rule 54(b) judgment on the grant of summary judgment. The court granted the Rule 54(b) motion, and this appeal followed.

## Discussion

Neither below nor on appeal has Fields questioned the removal on any basis other than that it is assertedly precluded by the presence of his Jones Act claim. It appears that the diversity of citizenship and amount in controversy requirements of 28 U.S.C. § 1332(a) are met, and Fields has never contended otherwise. Hence, as no defendant is a citizen of the state in which the suit was filed, removal on the basis of diversity was proper under 28 U.S.C. § 1441(a) & (b) if not barred by the Jones Act claim. Moreover, if the Jones Act did not preclude removal, it is also clear that it would have been proper because of OCSLA, as the district court

5

held. *Tennessee Gas Pipeline v. Houston Casualty Insurance Co.*, 87 F.3d 150, 154-56 (5th Cir. 1996).[1]

It is settled that as a general rule Jones Act cases are not removable. *Burchette v. Cargill*, 48 F.3d 173, 175 (5th Cir. 1995). The Jones Act, 46 U.S.C. App. § 688, incorporates general provisions of the Federal Employers' Liability Act, and the latter expressly bars removal of suits thereunder. 28 U.S.C. § 1445(a). However, a fraudulently pleaded Jones Act claim does not bar removal. *Burchette*, 48 F.3d at 175 ("'defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal'", quoting *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)). "While we have cautioned against pretrying a case to determine removal jurisdiction," the district court is authorized "to use a summary judgment-like procedure for disposing of fraudulent pleading claims." *Burchette*, 48 F.3d at 176. The court may deny remand where, but only where, it determines, after resolving "all disputed questions of fact and any ambiguities in the current controlling substantive law in

---

[1]    While Fields' general maritime law claim, brought in state court under the savings to suitors clause, 28 U.S.C. § 1331(1), is not one which "arise[s] under the Constitution, treaties, or laws of the United States" for purposes of  28 U.S.C. § 1331 and does not of itself furnish a basis for removal even though it could have been filed originally in federal court, nevertheless this does not preclude removal when there is some basis for original federal jurisdiction other than admiralty, such as diversity of citizenship or a statute. *See Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. 1981); *Tennessee Gas Pipeline*, 87 F.3d at 153 & nn. 5 & 6.

6

plaintiff's favor," that there is "'no reasonable basis for predicting that the plaintiff might establish liability'" under the Jones Act. *Id*.[2]

In order to recover under the Jones Act, the plaintiff's complained-of injury must have been suffered while he was a seaman and in the course of his employment. Section 688(a) (authorizing action by "[a]ny seaman who shall suffer personal injury in the course of his employment"). In order to be a seaman, an individual (among other things) "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Harbor Tug and Barge Co. v. Papai*, 117 S.Ct. 1535, 1540 (1997) (quoting *Chandris, Inc. v. Latsis*, 115 S.Ct. 2172, 2179 (1995) (citations and internal quotation marks omitted)).

Fields does not dispute that he has no possible Jones Act claim if the Neptune Spar is not a vessel, and he claims no substantial connection to anything else which he contends is a vessel or fleet of vessels.[3] And Fields has never contended that

---

[2] An additional basis on which to show fraudulent pleading—that there has been an outright fraud in the pleading of jurisdictional facts—is not involved or asserted in this case. *See Burchette*, 48 F.3d at 176 n.1.

[3] In his state court pleading, Fields alleged that at the time of his injury he "was employed as a roughneck/derrickhand as a member of the crew of Rig 10, in such a manner as to contribute to the overall intended purpose of said vessel," refers to "the vessel, Rig 10," and then alleges "the aforesaid vessel was in navigation in the Gulf of Mexico"; the pleading does not allege

7

if the district court correctly determined that the Neptune Spar is not a vessel, it nevertheless erred in granting Pool's motion for summary judgment.

A vessel is "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. In general, the "greater the structure's resemblance to conventional seafaring craft, the greater the odds of securing vessel status". *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 293 (5th Cir. 1990). Unusual appearance alone will not suffice to preclude vessel status, however. We have recognized "a variety of special purpose structures, far removed from the conventional notions of ships and seagoing barges, to be vessels." *Manuel v. P.A.W. Drilling & Well Service, Inc.* 135 F.3d 344, 348 (5th Cir. 1998). Fields argues that the Neptune Spar is such a specialized structure, and thus, interpreting all facts in his favor, must be viewed as a vessel. Defendants argue, however, that the Neptune Spar can only be characterized as a work platform under our precedent, and thus

---

that the Neptune Spar was a vessel or even mention it. However, the undisputed evidence establishes that Rig 10 was nothing more than a collection of several separate items of Pool's drilling equipment used by it to provide workover and drilling operations on offshore platforms, and which had, prior to Fields' injury, been transported to and assembled on the Neptune Spar. Fields was injured while on the Neptune Spar utilizing this assembled equipment. Rig 10 does not even float and cannot move on its own, and it is obviously not a vessel. Fields' only argument on appeal is that the Neptune Spar is a vessel and furnishes the basis for his claim of seaman status.

escapes vessel classification.

Courts have long recognized a distinction between "work platforms" that are designed for primarily stationary residence and true vessels. *See Cope v. Vallette Dry-Dock Co.*, 7 S.Ct. 336 (1887) (floating dry dock is not a vessel). Looking to the language of the statute, we have consistently defined vessel status in reference to the importance of transportation as the craft's purpose. *Manuel*, 135 F.3d at 348. In particular, we have focused on three factors when trying to determine whether a structure is a work platform beyond the realm of the Jones Act. First, we ask whether the structure was constructed to serve primarily as a work platform. Second, we look to whether or not the structure was moored or otherwise secured at the time of the accident. Lastly, we attempt to ascertain whether the transportation function of the structure went beyond theoretical mobility and occasional incidental movement. *See Burchett*, 48 F.3d at 176.

In applying the three-factor test of work-platform status to the Neptune Spar, it becomes apparent that it cannot be a vessel. As the defendants' affidavits indicated, there are no plans to even consider moving the Neptune Spar until the current field is exhausted. While nothing can ever be certain in the petroleum industry, the unchallenged prediction of defendants is that the field will remain productive for the next fifteen years. This distinguishes the Neptune Spar from the types of specialized mobile

drilling craft that we have previously classified as vessels. As we have taken care to point out, while such drilling craft may stay on a particular site, they always move on to the next location when their work is done. *See Manuel*, 135 F.3d at 346 (noting that drilling vessel had been deployed at nineteen different sites over the course of two years); *Columb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) ("highly mobile" submersible drilling barge was "routinely" refloated and moved to the next location). *See also Blanchard v. Engine and Gas Compressor Services, Inc.*, 575 F.2d 1140, 1143 (5th Cir. 1978) (distinguishing work platform from drilling barge rigs because there was no intention to move structures "on a regular basis, as is done with submersible drilling rigs"). Unlike these vessels, the Neptune Spar is designed not only to discover and open a field, but also to exploit it—a goal that requires considerably greater commitment to a particular location. Given these undisputed facts, it would seem readily apparent that the primary, indeed only, purpose of the Neptune Spar is to serve as a work platform in a specific, fixed location for the foreseeable future.

The work platform status of the Neptune Spar is reinforced by reference to the second factor. The Neptune Spar was not only secured to the ocean floor at the time of the accident, it was secured using an elaborate system that guarantees movement will be a difficult and expensive undertaking. We are not talking about a

10

case in which a structure merely rests on the bottom or is secured by a run-of-the-mill anchor. Here, the defendants have at presumably considerable expense sunk massive (180 foot) pilings into the ocean floor, and attached the spar to these pilings by means of similarly impressive chain lines. And like its sibling conventional fixed production platforms, the Neptune Spar is further anchored in position by the underwater infrastructure of extraction and exportation pipes that transport the petroleum from wellhead to the platform and from the platform to the shore. In this case, the infrastructure consists of two eight-inch pipelines and seven nine-and-a-half-inch casing risers. This distinguishes it from other structures whose commitment to a particular location is less firmly evidenced by the strength of their physical attachment. *Cf. Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 823-24 (5th Cir. 1975) (evidence sufficient to sustain jury finding that submersible petroleum storage barge sunk to the bottom and then connected to nearby platform by pipe and catwalk, but not in any way affixed into seabed, was a vessel)[4] *with*

_____

[4] In *Hicks*, the structure was sunk by the intake of easily-dischargeable water ballast and lacked secure purchase on the sea floor. Its owners were also somewhat vague about their future plans to possibly move the structure, admitting at one point that such a move had been considered. Insofar as the first prong of the work-platform test is concerned, the indeterminacy of the owners' intentions in *Hicks* serves to distinguish it from the case before us. We also note that two cases have explicitly recognized the narrowing of *Hicks*. *See Johnson v. Odeco Oil and Gas*, 864 F.2d 40, 43 (5th Cir. 1989) ("*Hicks* is no longer the controlling standard"); *Gremillion*, 904 F.2d at 294.

*Blanchard*, 575 F.2d at 1143 (5th Cir. 1978) (compressor building mounted on submersible barge was distinguishable from structure in *Hicks* because barge was anchored with steel cables attached to fixed pilings); *Hemba v. Freeport McMoran Energy Partners, Ltd.*, 811 F.2d 276, 278 (5th Cir. 1987) (rig attached by pilings driven two hundred feet into the seabed was not a vessel).

Any lingering doubt would seemingly be eradicated by examination of the third factor. While the Neptune Spar remains in its current position, it will have extremely limited and purely incidental mobility. According to the defendants' unchallenged affidavits, the Neptune Spar can be moved by tightening and slackening the chain lines connected to the pilings. This procedure is used to place the structure over one of the site's seven closely packed wellheads to perform needed work. Because of the location of the pilings, however, this movement is limited to 250 feet in any direction. This tightly-constrained range of motion is not inconsistent with work platform status. *See Burchett*, 48 F.3d at 177-78 (loading barge was a work platform despite the fact it was regularly moved to align itself with boat receiving goods); *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999, 1002 (5th Cir. 1973) (construction barge that was regularly towed into open water to launch completed craft was not a vessel). While there remains some theoretical possibility of more lengthy movement when the current field is exhausted, the mere possibility

of movement so many years hence cannot render irrelevant the structure's current and long-term immobility.

Under the three-prong test of work-platform status, then, the Neptune Spar is clearly not a vessel. While we have also referenced various other factors that might guide the inquiry into vessel status,[5] we have held that in work platform cases resort to such an analysis is unnecessary if the three major factors indicate that the structure is not a vessel. *See Burchett*, 48 F.3d at 177 (additional factors are secondary and useful only in determining close cases). As we have noted, fixed offshore oil platforms—which obviously are not vessels, *see Rodrigue v. Aetna Casualty and Surety Co.*, 89 S.Ct. 1835, 1840-43 (1968) ("man-made islands" not subject to admiralty law)—contain some of these additional factors such as lifeboats and crew quarters. *See Johnson*, 864 F.2d at 43 (noting factors could not be determinative since "they routinely exist on structures, such as production platforms, that are not vessels"). Application of these factors is unnecessary in this case.

Faced with the above analysis, Fields largely relies on two points. The first is the payment of maintenance to Fields by Pool

---

[5] The most comprehensive enunciation of these factors is 1) intention to move on a regular basis; 2) ability of submerged structure to be refloated; 3) the length of time the structure has remained at its current location; 4) the presence of navigational aids; 5) a raked bow; 6) life-boats and rescue equipment; 7) bilge-pumps; 8) crew-quarters; 9) registration as a vessel with the Coast Guard. *See Johnson*, 864 F.2d at 43.

and statements by employees of Pool's adjusters. Maintenance is a seaman's remedy, and in special circumstances the payment of maintenance may properly be admitted as evidence of seaman status. *See Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 367-368 (5th Cir. 1982).[6] No such circumstances are present here. Moreover, the payment of maintenance is at most only one factor out of many, *see id.*, and cannot by itself justify remand given the clarity of the Neptune Spar's work platform status. This is especially so since the decision to pay maintenance was made by Pool, not Oryx. Pool does not own or run the Neptune Spar, and whatever inference might theoretically have arisen had the owner Oryx—presumably intimately familiar with the nature and purpose of its own structure—designated maintenance as a remedy is greatly weakened here. The fact that employees of Pool may have implicitly classified the Neptune Spar as a vessel is of marginal significance at the very best.

---

[6]  In *Savoie*, the plaintiff had worked as a deckhand on the defendant employer's vessel on October 21, 1979, and then worked on his employer's duck blinds on shore until some seven days later when he was injured while so engaged. The issue was whether at the time of the injury he was still a member of the vessel's crew. The defendant asserted he was not as it had "discharged" him from the vessel. We held that the defendant's payment of maintenance was admissible to show that the "discharge" was not "intended to fully terminate Savoie as a Candies seaman, as opposed to being merely a routine formality when a seaman was temporarily rotated off the ship and expected to soon return to his duties there in accordance with normal practice" and that the maintenance "payments tended to show that Candies regarded Savoie as being a seaman at the time of the accident, notwithstanding his prior 'discharge.'" *Id*. at 367. No such special relevance is present here.

14

Fields also complains that the district court denied him an adequate opportunity to respond to defendants' arguments prior to its determination that lack of vessel status precluded remand, and compounded this error by refusing to reconsider that determination in light of new evidence he presented in his opposition to summary judgment.  In his initial motion for remand, Fields did not submit any evidence indicating that the Neptune Spar might be a vessel other than the payment of maintenance and statements by employees of Pool's adjusters.  In their response, defendants attached affidavits from employees of Oryx which clearly establish that the Neptune Spar is not a vessel.  Prior to the previously scheduled hearing date on the motion to remand, Fields did not either submit a response to defendants' arguments or request more time to do so. On the afternoon of the day the district court denied the motion to remand, Fields requested an extension, which was denied as moot.

Fields later filed a motion for reconsideration, and also included as exhibits to his motion in opposition to Pool's motion for summary judgment a variety of print outs—*not* in proper affidavit form or appropriately authenticated—assertedly taken from the Internet and from the petroleum industry press in order to challenge the lower court's denial of remand.  In granting summary judgment for Pool, the district court refused to reconsider its prior rejection of vessel status in light of this material.  Fields concedes that these determinations by the district court must be

15

reviewed under an abuse of discretion standard.  Given the fact that the only evidence Fields has been able to unearth up to this point was publicly available and could have been attached to the initial motion to remand or proffered in the wake of defendants' response to that motion, we cannot say that the district court abused its discretion in refusing to consider this tardily and improperly presented material.[7]

The district court thus properly determined that, as a matter of law, the Neptune Spar is not a vessel.  The denial of the motion to remand and the subsequent grant of summary judgment in favor of Pool was thus proper.

## Conclusion

For the reasons stated, the judgment of the district court is

---

[7]    In any case, the material hardly advances Fields' cause.  It confirms that the Neptune Spar will remain at its present location until the field is exhausted (some fifteen or more years)—the chief factor precluding vessel status. It also indicates that the Neptune Spar was transported to its current location in two pieces strapped aboard a heavy lift ship and assembled on site, a strong indication that long distance movement of the assembled spar is a difficult undertaking.  Fields also makes a perfunctory challenge to the district court's denial of his motion (filed some three weeks after his notice of appeal) to supplement the record with material not theretofore filed with or otherwise before the district court. Fields failed to enunciate a specific statement of the reasons that required supplementation.  As the district court noted, he thus failed to comply with Local Rule 26.5.1(e) of the Eastern District of Louisiana.  The denial of the motion was not an abuse of discretion.

AFFIRMED.