**Kathy CROCKETT, Horace Wright and Rebecca Wright Plaintiffs**

v.

**CITIFINANCIAL, INC., American Health and Life Insurance Co., Triton Insurance Company, C.A. Flowers and C.S. Prince Defendants**

**No. 4:01CV172MD.**

United States District Court,
N.D. Mississippi,
Greenville Division.

Feb. 28, 2002.

Thomas R. Frazer, II, Frazer Davidson, PA, Jackson, for Isiah Brownlow, Roy Catchings, Kathy Crockett, Vernal Thurmond, Horace Wright, Rebecca Wright, plaintiffs.

Paul Scott Phillips, Campbell, Delong, Hagwood & Wade, Greenville, John R. Chiles, Elizabeth Bosquet, Burr & Forman, Birmingham, AL, Charles E. Griffin, Griffin & Associates, Walter D. Willson, Trey Christian Dellinger, Wells Marble & Hurst, PLLC, Jackson, for Citifinancial, Inc. aka Commercial Credit, C.A. Flowers, M.J. Upchurch, C.S. Prince, Triton Insurance Company, American Health & Life Insurance Company, American Bankers Insurance Company of Florida, defendants.

## MEMORANDUM OPINION

MILLS, District Judge.

This cause comes before the Court on the plaintiff's motion for remand [11–1]. Having reviewed the arguments and exhibits, the Court is now ready to rule.

## FACTS

The plaintiffs currently involved in this action include Kathy Crockett, Horace Wright and Rebecca Wright, all of whom are residents of Greenwood, Mississippi. Other plaintiffs were initially a part of this suit, but as of this date, all the plaintiffs have been dismissed except for Crockett and the Wrights.

The defendants include three non-resident corporations: Citifinancial, Inc., Triton Insurance Company, and American Health and Life Insurance Company. A fourth foreign corporation, American Bankers Insurance Company of Florida, has been dismissed as a defendant. The defendants also include three Greenwood, Mississippi residents who were employees of Citifinancial in its Greenwood offices: C.A. Flowers, M.J. Upchurch and C.S. Prince. The claims against Upchurch have also been dismissed, and Flowers and Prince are now the only in-state defendants.

Between 1993 and 1997, plaintiff Kathy Crockett took out several loans from Citifinancial through its offices in Starkville, Mississippi. Crockett does not remember which loan officers she dealt with, but she states in her deposition testimony that she does not remember dealing with either Flowers or Prince, neither of whom ever worked in the Starkville offices. According to Crockett, she did not actually read her loan agreement until sometime in November or December of 2000, at which time she was surprised to notice charges for $206.00 for credit disability and $89.00 for single credit life insurance. Upset over these additional charges, Crockett initiated these proceedings.

Horace and Rebecca Wright also took out several loans from Citifinancial at different times between 1993 and 1998. Rebecca Wright stated that neither she nor her husband had dealt with either Flowers or Prince, although Flowers and Prince had each witnessed loan agreements between the Wrights and Citifinancial. She also admitted that neither she nor her husband had actually read the loan agreements until sometime in 1998 or 1999, after a relative had suggested that she might have been charged for insurance. At that time, the Wrights learned that they had been charged $273.00 for insurance pursuant to the agreement. Aggrieved, the Wrights brought suit.

Crockett and the Wrights, along with the other plaintiffs who have since withdrawn, filed this action in the Leflore County Circuit Court, raising the following allegations against the defendants collectively: (1) breach of fiduciary duty, (2) fraudulent misrepresentation and/or omission, (3) negligent misrepresentation and/or omission, (4) negligence, (5) "unconscionability," (6) wrongful conduct based on failure to be licensed, and (7) failure to return or refund unused premiums for insurance when one of the plaintiffs refinanced their loan. The plaintiffs also allege that Flowers and Prince (and the aforementioned Upchurch) as individuals "independently and knowingly lied to some of the plaintiffs in an attempt to, and actually accomplished, convincing [sic] the plaintiffs to purchase unnecessary loan insurance. The true motivation of the defendants Flowers, Upchurch, and Prince was to obtain the commissions on the sale of the insurance by cheating the plaintiffs."

The defendants removed this case to federal court on the theory that the in-state defendants were fraudulently joined for the sole purpose of defeating diversity. The plaintiffs deny that Flowers and Prince were fraudulently joined and now move for remand back to state court.

## ANALYSIS

██ If the in-state defendants are in fact properly joined as the plaintiffs assert,

then complete diversity is destroyed and this Court lacks jurisdiction to hear this case. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 814 (5th Cir.1993). *See also Worldwide Machinery Sales, Inc. v. Illinois Cent. R. Co.*, 26 F.Supp.2d 900 (S.D.Miss.1998); *Brassell v. Kanawha Ins. Co.*, 988 F.Supp. 1017 (N.D.Miss.1997). The Fifth Circuit has identified the standard of review in fraudulent joinder claims as follows:

> The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). Outright fraud in pleading jurisdictional facts means that the plaintiff has misrepresented the citizenship of a defendant in order to defeat diversity. Such is not raised as an issue here. Thus, the defendants must show that there is no possibility of recovery against the in-state defendants in order to prevail.

■ In assessing claims of fraudulent joinder, district courts are authorized "to use a summary judgment-like procedure for disposing of fraudulent pleading claims." *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir.1999)(quoting *Burchett v. Cargill*, 48 F.3d 173, 176 (5th Cir. 1995)). Under this procedure, this Court may pierce the pleadings and consider affidavits and deposition testimony when reviewing the fraudulent joinder claim. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir.1999). Also, the Court must "resolve factual controversies in favor of the nonmoving party, but only when

there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). However, in the absence of any proof, this Court should not assume that the nonmoving party could or would prove the necessary facts. *Id.*

■ The deposition testimony of Kathy Crockett reflects that she did not know either Prince or Flowers, and that she dealt exclusively with the Starkville office, while the two in-state defendants worked exclusively in the Greenville office. Crockett does not even allege that Prince and/or Flowers were in any way involved with her loan transactions. The Court therefore concludes that Crockett has no possibility of recovery against Prince and Flowers. That does not dispose of the case, however, since Crockett may be entitled to remain joined to the Wrights in federal court assuming they can assert the possibility of recovery against either of the two in-state defendants.

The deposition testimony of Rebecca Wright stated affirmatively that she dealt exclusively with a man in the Greenville office, while both Prince and Flowers are women. Rebecca Wright also stated that she did not know either Prince or Flowers, nor did she recognize their names. The only apparent connection between the in-state defendants and the Wrights lies in the fact that Prince and Flowers each witnessed one of the Wrights' loan transactions. In light of that (and the Wrights' failure to identify any other conduct on the part of Prince and Flowers which relates even tangentially to their claims), the Court will now address each count of the complaint to consider whether the mere witnessing of a loan agreement can result in the possibility of recovery for the Wrights against Prince and Flowers.

## I. BREACH OF FIDUCIARY DUTY.

█ The Mississippi Supreme Court has stated that "[w]henever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character." *Braidfoot v. William Carey College,* 793 So.2d 642, 650 (Miss.App.2000)(citing *Mullins v. Ratcliff,* 515 So.2d 1183, 1191 (Miss.1987)). Mississippi case law does allow for the possibility that a debtor-creditor relationship may rise to the level of at least a "quasi-fiduciary" relationship in some situations. *Lowery v. Guaranty Bank and Trust Co.,* 592 So.2d 79, 84–85 (Miss.1991). However, this Court rejects the implication that everyone who witnesses a contract develops a quasi-fiduciary relationship with the parties. In the absence of any other basis for finding a fiduciary relationship between the Wrights and either Flowers or Prince, the Court concludes that this claim must fail.

## II. FRAUDULENT OR NEGLIGENT MISREPRESENTATION AND/OR OMISSION.

█ Under Mississippi law, a party seeking to establish fraudulent misrepresentation must prove the following elements by clear and convincing evidence:

1.  a representation;
2.  its falsity;
3.  its materiality;
4.  the speaker's knowledge of its falsity or ignorance of its truth;
5.  his intent that it be acted upon by the person and in the manner reasonably contemplated;
6.  the hearer's ignorance of its falsity;
7.  his reliance on its truth;
8.  his right to rely thereon; and

his consequent and proximate injury.

█ *Cook v. Children's Medical Group, P.A.,* 756 So.2d 734 (Miss.1999). Negligent misrepresentation differs from fraudulent misrepresentation only in that the defendant-speaker need not know the statement was false if he failed to exercise reasonable care in making the statement. *Arnona v. Smith,* 749 So.2d 63, 66 (Miss. 1999). In either case, the plaintiff must demonstrate his reliance on the statement and his right to do so. In the case sub judice, however, the "statements" at issue were merely the witnessing of separate loan agreements. The purpose of witnessing an agreement is merely to verify the acquiescence of the actual parties to the agreement, and this Court fails to see how the Wrights could have justifiably relied on the fact that someone witnessed the signing of their loan agreements as indicating anything about the contents of the agreements themselves. This claim must also fail.

## III. NEGLIGENCE.

█ The prima facie claim for negligence contains the following elements: (a) duty or standard of care, (b) breach of that duty, (c) proximate causation, and (d) damages or injury. *Arnona,* 749 So.2d at 66. The Court perceives no duty that either Flowers or Prince owed to the Wrights which was breached by witnessing the Wrights' loan agreements. This issue is also without merit.

## IV. "UNCONSCIONABILITY."

█ The plaintiffs also argue that the defendants as a whole are somehow liable for binding them to "unconscionable" contracts in contravention of Miss.Code Ann. § 75–2A–108, which states:

1.  If the court as a matter of law finds a lease contract or any clause of a lease contract to have been uncon-

scionable at the time it was made, the court may refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

2. With respect to a consumer lease, if the court as a matter of law finds that a lease contract or any clause of a lease contract has been induced by unconscionable conduct or that unconscionable conduct has occurred in the collection of a claim arising from a lease contract, the court may grant appropriate relief.

3. Before making a finding of unconscionability under subsection (1) or (2), the court, on its own motion or that of a party, shall afford the parties a reasonable opportunity to present evidence as to the setting, purpose and effect of the lease contract or clause thereof, or of the conduct.

4. In an action in which the lessee claims unconscionability with respect to a consumer lease.

   a. If the court finds unconscionability under subsection (1) or (2), the court shall award reasonable attorney's fees to the lessee.

   b. If the court does not find unconscionability and the lessee claiming unconscionability has brought or maintained an action he knew to be groundless, the court shall award reasonable attorney's fees to the party against whom the claim is made.

   c. In determining attorney's fees, the amount of the recovery on behalf of the claimant under subsections (1) and (2) is not controlling.

Miss.Code Ann. § 75–2A–108 (1999).

This Court fails to see how this statute can possibly implicate the actions of Flowers and Prince. For that matter, the Court has no idea why the plaintiffs think they are entitled to damages simply because a contract is "unconscionable" when the statute is obviously designed to provide an unconscionability defense rather than a private cause of action.

## V. THE REMAINING COUNTS.

The remaining three counts of the complaint allege that the defendants essentially offered insurance without a license, failed to return or refund unused premiums when the plaintiffs refinanced their loans and (with specific reference to Flowers, Prince and Upchurch) lied to the plaintiffs in an effort to induce them to purchase unnecessary loans. These claims are totally unsupported by the record currently before this Court, which, with regard to Flowers and Prince, consists exclusively of their signatures as witnesses on a few documents. The plaintiffs have not supported these allegations against either of the in-state defendants in any manner other than conclusory statements in their complaint and briefs which are refuted by their own deposition testimony.

## CONCLUSION

As the Court has noted above, the burden on defendants who seek removal based on fraudulent joinder is heavy. Based on the foregoing analysis, however, the defendants have met that burden in the case sub judice. Based on the record and affidavits submitted by the parties, the Court concludes that there is no possibility of recovery against either of the two in-state defendants.

ACCORDINGLY, it is the ruling of this Court that the plaintiffs' motion for remand to the Leflore County Circuit Court [11–1] be DENIED. An order to that effect shall issue this day.