**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-21019.

Robert S. FRANK, Plaintiffs-Appellants,

v.

BEAR STEARNS & CO., Defendants-Appellees.

Nov. 26, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The defendants-appellees in this case are the underwriters for one or more securities offerings made by the Federal Home Loan Mortgage Corporation ("Freddie Mac") and the Federal National Mortgage Association ("Fannie Mae"). Between 1991 and 1994, Freddie Mac, a federally chartered, sponsored, and regulated corporation, *see* 12 U.S.C. §§ 1451-1459 (1997), issued securities described as Multiclass Mortgage Participation Certificates and Multiclass Mortgage Securities ("Collateralized Mortgage Obligations"). During the same time period, Fannie Mae, another federally chartered, sponsored, and regulated corporation, *see* 12 U.S.C. §§ 1716-1723h (1997), issued securities described as Guaranteed REMIC Pass-Through Certificates ("REMIC Certificates"). As underwriters, each defendant then sold the securities to others in arms-length transactions, who in turn sold these securities to

1

other brokers or individuals.

One of the many purchasers that bought these securities directly from the defendants was High Yield Management, Inc. ("HYM"). HYM then sold these securities directly to the plaintiffs. HYM is now insolvent. The defendants never sold any of the securities at issue to the plaintiffs. None of the defendants maintained any accounts or acted as brokers for any of the plaintiffs. The defendants did not have any contact or communication with or make any statements to the plaintiffs, and did not solicit the plaintiffs' purchases of the securities at issue. The plaintiffs did not own, directly or indirectly, any voting securities of HYM and none of the purchasers from which the plaintiffs bought these securities, such as HYM, ever acted as agents of the defendants in further transactions.

The plaintiffs ended up losing $8,687,323.60 on the securities and on June 9, 1995 filed an original petition against the defendants in the 129th Judicial District Court of Harris County, Texas. The original petition alleged breach of contract and violations of the Texas Securities Act. TEX.REV.CIV.STAT.ANN. art 581-33A(2), -33F. The plaintiffs asserted that the defendants breached their alleged duty under the purchase agreements with Fannie Mae and Freddie Mac to deliver disclosure documents to the purchasers of the securities. On August 2, 1995, the defendants removed the case to federal court on the grounds that (1) the plaintiffs' claims that they were intended third-party beneficiaries of contracts between the defendants and

2

federally-sponsored enterprises arose under federal law, and (2) appellants had artfully pled federal securities law as state law claims. Plaintiffs moved to remand the matter to state court, but the district court denied the motion on October 6, 1995. Plaintiffs appeal this denial.

On March 25, 1996, the magistrate judge signed an extensive 23-page memorandum and recommendation granting Paine Webber's motion for summary judgment. The district court adopted the recommendation on May 20, 1996. The magistrate judge then issued recommendations to grant summary judgment for the remaining defendants which, again, the district court adopted by orders signed on September 24, 1996. The district court then signed a final judgment on September 26, 1996. Our decision will not reach plaintiffs' appeal of these decisions because we find that the district court lacked subject matter jurisdiction to hear this case and, therefore, should have remanded the case to the state court. Accordingly, we reverse the district court's denial of the plaintiffs' motion to remand.

## *Analysis*

We review a district court's denial of a motion to remand *de novo. Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 365 (5th Cir.1995). The party invoking the removal jurisdiction of federal courts bears the burden of establishing federal jurisdiction over the state court suit. *Id.* The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of

3

a case properly before it and thereby implicates important federalism concerns. *Id.* The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts. *Id.* Absent diversity of citizenship, removal is appropriate only for those claims within the federal question jurisdiction of the district courts. 28 U.S.C. § 1331 (1997).

Under the "well pleaded complaint" rule, as discussed in *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), a movant may not remove a case to federal court unless the plaintiff's complaint establishes that the cause of action arises under federal law. 463 U.S. at 10-11, 103 S.Ct. at 2846-47. Courts will, however, typically look beyond the face of the complaint to determine whether removal is proper. *Villarreal v. Brown Express, Inc.,* 529 F.2d 1219, 1221 (5th Cir.1976). A federal court may find that a plaintiff's claims arise under federal law even though the plaintiff has not characterized them as federal claims. *Aquafaith Shipping Ltd. v. Jarillas,* 963 F.2d 806, 808 (5th Cir.), *cert. denied,* 506 U.S. 955, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992); *see also Uncle Ben's Intern. Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Aktiengesellschaft,* 855 F.2d 215, 217 (5th Cir.1988) (removal was proper notwithstanding pleading that made no reference to federal statutes). The plaintiffs' state court petition alleged only breach of contract claims and violations of state securities laws. As the petition did not allege violation of any federal statute, we are left with the defendants' contention that the case arises under

federal common law, which we find to be without merit.

Federal question jurisdiction extends to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1997). It is well established that the "arising under" language of section 1331 has a narrower meaning than the corresponding language in Article III of our Constitution, which defines the limits of the judicial power of the United States. *See* U.S. CONST. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...."). Federal question jurisdiction under section 1331 extends to cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Bd.,* 463 U.S. at 27-28, 103 S.Ct. at 2855-56. Here, the parties are not diverse and the complaint alleged state law causes of action, therefore, removal to federal court depends on the existence of a federal question. *See Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 924 (5th Cir.1997) ("Absent diversity of citizenship, federal question jurisdiction is required to support removal."). Although the plaintiffs did not literally allege federal claims in their original complaint, the defendants' contention is that this case presents a federal question because the plaintiffs' state law claims are based on interpretation of a federal contract, thereby invoking federal

5

common law issues.

Federal question jurisdiction may exist over claims arising under federal common law. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) (noting "[w]e see no reason not to give "laws' its natural meaning, and therefore conclude that § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin."); *Sam L. Majors Jewelers,* 117 F.3d at 926 (same). In such circumstances, where the cause of action is not itself created by federal statutory law, the existence of federal question jurisdiction depends on an evaluation of the nature of the federal interest at stake. *See Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 814 n. 12, 106 S.Ct. 3229, 3235 n. 12, 92 L.Ed.2d 650 (1986) (highlighting importance of nature of federal issue in relation to existence of federal-question jurisdiction).

In suits between private parties, federal common law exists in the narrow class of cases where federal rules are necessary to protect uniquely federal interests which the application of state law would frustrate. *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 31, 97 S.Ct. 2490, 2494-95, 53 L.Ed.2d 557 (1977); *Jackson v. Johns-Manville Sales Corp.,* 750 F.2d 1314, 1327 (5th Cir.1985) (citing *Miree* for proposition that "[d]isplacement of state law is primarily a decision for Congress....").[1] According to the United

---

[1]Federal common law also exists where necessary to protect federal proprietary interests in suits involving the United States or its officers, *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366-67, 63 S.Ct. 573, 574-75, 87 L.Ed. 838 (1943), and where Congress has given the courts the power to develop

6

States Supreme Court, these instances are "few and restricted."

*Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1444-45, 10

L.Ed.2d 605 (1963).  In *Texas Indus., Inc. v. Radcliff Materials,*

*Inc.,* the Court explained this restriction:

> [A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases.  In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.

451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981)

(footnotes omitted).  The Fifth Circuit more recently restated this

rationale in *MCI Telecomm. Corp. v. Credit Builders of Am.,*

endorsing a "cautious approach with respect to the recognition of

federal common law."  980 F.2d 1021, 1022-23 (5th Cir.)

(criticizing and declining to follow *Ivy Broadcasting Co. v.*

*American Tel. & Tel.,* 391 F.2d 486 (2d Cir.1968)), *cert. granted*

*and judgment vacated,* 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d

676, *orig. opinion reinstated on remand,* 2 F.3d 103 (5th Cir.),

---

substantive law.  *See, e.g., Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 642, 101 S.Ct. 2061, 2067-68, 68 L.Ed.2d 500 (1981) (explaining that "[f]ederal common law also may come into play when Congress has vested jurisdiction in the federal courts and empowered them to create governing rules of law.").  In addition, admiralty and maritime cases are governed by federal common law because of the strong federal interest in such matters.  *See, e.g., Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Chelentis v. Luckenbach S.S. Co.,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

*cert. denied,* 510 U.S. 978, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993).

The defendants' argument that federal common law governs all contracts to which Freddie Mac or Fannie Mae is a party fails because such contracts do not necessarily fall within the narrow class of cases governed by federal common law. The plaintiffs here sued as third party beneficiaries of the contracts between the defendants and Fannie Mae and Freddie Mac. The defendants removed the case to federal court, pinning their federal jurisdictional hopes on the theory that these are government contracts which necessarily involve interpretation of federal law. Fannie Mae and Freddie Mac, however, are both shareholder-owned corporations in which the United States has no ownership interests. *See Mendrala v. Crown Mortg. Co.,* 955 F.2d 1132 (7th Cir.1992) (noting that government has no ownership interest in Freddie Mac, does not control Freddie Mac, appoints only a minority of Freddie Mac's directors, and makes no appropriations to Freddie Mac).[2] As such,

_____

[2]In response to frequently asked questions, Freddie Mac has posted the following on its world wide web home page:

> 5) Is Freddie Mac a government agency?
>
> No. Congress chartered Freddie Mac with a special mission, but the government has no ownership interest in the company. Freddie Mac receives no federal funds. In fact, we pay federal taxes. Freddie Mac is owned by its shareholders and, like other corporations, is accountable to its shareholders and a board of directors. Freddie Mac's board of directors consists of 18 members (13 are elected each year by stockholders; the other five are appointed by the President of the United States). Anyone can own Freddie Mac stock, which is traded on the New York and Pacific Stock Exchanges.

*FAQ About Freddie Mac* (visited Oct. 14, 1997)

the defendants' contracts with Fannie Mae and Freddie Mac are not "government contracts" because the United States is not a party to those contracts.  Consequently, this case does not concern rights or obligations of the United States as required for the creation of federal common law.

The defendants cite various district court cases from other circuits for the proposition that federal common law governs all contracts to which Freddie Mac or Fannie Mae is a party;  however, these cases are readily distinguishable from the present case.  In each of those cases, Freddie Mac was a party to the lawsuit, whereas neither Freddie Mac nor Fannie Mae is a party to the present case.  *See Dupuis v. Federal Home Loan Mortg. Corp.,* 879 F.Supp. 139 (D.Me.1995);  *Federal Home Loan Mortg. Corp. v. Dutch Lane Assoc.,* 810 F.Supp. 86 (S.D.N.Y.1992);  *Federal Home Loan Mortg. Corp. v. Nazar,* 100 B.R. 555 (D.Kan.1989).[3]  Furthermore,

_____

<http://www.freddiemac.com/tenquest.htm>.  Similarly, Fannie Mae has posted the following on its home page:

> The corporation's policies are established by an 18-member board of directors.  Thirteen of these directors are elected by the shareholders and the remaining five are appointed by the President of the United States. The day-to-day management of Fannie Mae and its 3,400 employees is conducted by the corporation's officers....  Fannie Mae is a tax-paying corporation, owned entirely by private stockholders.  Its stock is traded on the New York Stock Exchange and other major exchanges....

*Fannie Mae—Housing America—Ownership and Management* (visited Oct. 14, 1997)
<http://www.fanniemae.com/Homebuyer/House_Am/ha_own.html>.

[3]Although these cases involved Freddie Mac, the defendants argue by analogy that the rationale of these cases is equally applicable to Fannie Mae because both Freddie Mac and Fannie Mae

9

Congress explicitly vested jurisdiction in the district courts over cases to which Freddie Mac is a party. *See* 12 U.S.C.A. § 1452(f) (1997) ("[A]ll civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value...."). If Congress intended this jurisdictional grant to extend to all cases that merely involve Freddie Mac securities simply by virtue of that involvement and without regard to whether Freddie Mac is a party, Congress would have said so.

Similarly, although some cases have found that federal question jurisdiction exists where plaintiffs sue as third-party beneficiaries of private contracts necessarily involving interpretation of federal law, the cases that the defendants cite distinguish themselves because they involved agreements entered into directly pursuant to an Executive Order, *see Terry v. Northrup Worldwide Aircraft Svcs.,* 786 F.2d 1558, 1560-61 (11th Cir.1986) ("Since federal law controls the enforcement and construction of executive order conciliation agreements, resolution of appellees' cause of action, based on their status as third-party beneficiaries of the agreement, will require interpretation and application of federal law.") (quoting *Eatmon v. Bristol Steel & Iron Works,* 769 F.2d 1503, 1517 (11th Cir.1985)), or an Administrative Order on Consent. *See Amoco Chem. Co. v. Tex Tin Corp.,* 902 F.Supp. 730,

---

are federally chartered and highly regulated. We accept this analogy for purposes of our analysis in this case.

10

735 (S.D.Tex.1995). In contrast, in the present case, the government did not direct Fannie Mae or Freddie Mac to enter into purchase and sale agreements with the defendants. Instead, the Fannie Mae and Freddie Mac congressional charters merely enabled Fannie Mae and Freddie Mac to enter into such contracts, thereby detracting from the propriety of exercising federal question jurisdiction in this case.

This case is not one of the "few and restricted" cases involving a genuine federal question because it does not involve the rights and obligations of the United States, interstate or international issues implicating the conflicting rights of states, or foreign relations. *See Texas Indus.*, 451 U.S. at 641, 101 S.Ct. at 2067; *MCI,* 980 F.2d at 1022-23. Although Congress chartered Fannie Mae and Freddie Mac to establish secondary mortgage markets subject to federal regulation, the mere fact that the United States has an interest in regulating the secondary mortgage market does not in itself justify federal question jurisdiction in every case involving these federally regulated entities. *See Miree,* 433 U.S. at 31, 97 S.Ct. at 2494-95 (refusing to create federal common law, despite strong federal regulatory interest in aviation safety, due to absence of "significant conflict between some federal policy or interests and the use of state law.").[4]

---

[4]In *Miree,* a victim of a plane crash and the survivors of deceased passengers sought to recover from DeKalb County, Georgia, as third-party beneficiaries of a contract between the Federal Aviation Administration and DeKalb County, alleging that the county had breached its contractual obligation to maintain a safe environment for the airport. *Miree,* 433 U.S. at 26-27, 97 S.Ct. at 2492-93. Despite a strong federal regulatory interest

This Court's policy of taking a cautious approach to the recognition of federal common law also supports our conclusion that federal question jurisdiction does not exist in this case. *See MCI* 980 F.2d at 1022-23. That Congress has legislated in an area does not, without more, confer subject matter jurisdiction on federal courts regarding all matters requiring interpretation of that legislation. *Chuska Energy Co. v. Mobil Exploration & Producing North America, Inc.,* 854 F.2d 727, 730 (5th Cir.1988). Finding federal question jurisdiction under the circumstances presented here would mean that any time Congress takes steps to regulate or stabilize a particular market, federal question jurisdiction would exist regarding any controversy related to that market, no matter how far removed from federal rights and obligations. State court is the proper forum for these private parties to adjudicate their dispute. There is no reason to presume that the federal interest in preserving a stable secondary mortgage market would be threatened or frustrated by allowing the state courts to resolve purely private disputes only tangentially related to those federal interests. State courts routinely adjudicate actions involving related federal issues, and there is no danger of erroneous or inconsistent construction each time a state court adjudicates these questions in common-law or state statutory actions. *Id.*

---

in aviation safety, the Court refused to create federal common law because there was no evidence of a "significant conflict between some federal policy or interests and the use of state law." *Id.* at 31, 97 S.Ct. at 2495 (quoting *Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)).

12

*Conclusion*

The facts presented here are not appropriate for federal question jurisdiction because the case does not arise under federal law. This case is not within the narrow class of private disputes appropriate for the creation of federal common law by virtue of uniquely federal interests that would be frustrated by the application of state law. Accordingly, we REVERSE the district court's denial of plaintiffs' motion to remand to state court and REMAND to the district court with instructions to remand the case to the state court.

REVERSED and REMANDED.