**Barbara STATON, Plaintiff,**

v.

**WELLS FARGO BANK,
N.A., Defendant.**

**No. CIV. A. 3:01–CV–2235–M.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 8, 2002.

Robert A. Gammage, Attorney at Law, Hill Gilstrap, Arlington, TX, for plaintiff.

Ethal J. Johnson, Attorney at Law, Ogletree, Deakins, Nash, Smoak & Stewart, Houston, TX, for defendant.

### *MEMORANDUM ORDER AND OPINION*

LYNN, District Judge.

Before the Court is Plaintiff's Motion to Remand, filed December 7, 2001. For the

reasons set forth below, Plaintiff's Motion is **DENIED**.

## FACTUAL PREDICATE AND ISSUE

This case arises from the termination of Plaintiff Barbara Staton ("Staton") from her employment at Stephens, Inc., where she served as the National Sales Coordinator for the account of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). On July 15, 2001, Staton filed suit against Wells Fargo in state court, claiming it tortiously interfered with her contractual and business relationship with Stephens, Inc.[1] Wells Fargo was served with process on August 15, 2001, but did not remove the case to federal court until November 7, 2001. Removal was based solely on diversity jurisdiction.[2]

Staton contends Wells Fargo's removal was untimely because it could ascertain, from the face of her Original Petition ("Petition"), that she was seeking damages in excess of $75,000.00, the statutory minimum jurisdictional amount. Wells Fargo argues the Petition did not affirmatively reveal relief in excess of the jurisdictional minimum and that removal *is* timely when judged from Staton's Answers and/or Objections to Defendant's First Set of Interrogatories, which Wells Fargo received October 25, 2001. The issue presented for this Court is thus whether Staton's Petition sought damages in excess of the minimum jurisdictional amount for federal court, so that the case had to be removed within thirty days of service.

## ANALYSIS

■ The burden of establishing federal jurisdiction is on the party seeking removal, Wells Fargo.[3] Further, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court."[4] The removal statute provides, in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days, after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b) (West 1994).

■ Paragraph 5 of the Petition describes Staton's salary at the time of her termination, $85,000.00 per year plus bonuses.[5] Staton further requests that

---

**1.** Staton filed suit in the 134th Judicial District Court of Dallas County, Texas.

**2.** 28 U.S.C. § 1332 (West 1993) provides, in relevant part:
The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
　(1) citizens of different States.
*Id.*

**3.** *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir.1997).

**4.** *Cross v. Bankers Multiple Line Insur. Co.*, 810 F.Supp. 748, 750 (N.D.Tex.1992). *See also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts.").

**5.** Paragraph 5, in full, states that, "Plaintiff was hired in July of 1998 and her salary at the time of her termination by Stephens was $85,000 a year plus bonuses."

"upon final hearing hereof, Plaintiff [may] recover of and from Defendant her actual damages, all prejudgment and post judgment interest to which Plaintiff may be entitled under applicable law, reasonable and necessary attorney's fees and costs of court." [6] In her interrogatory answer, Staton elaborated on her requested relief, stating that she seeks "wages, bonus payments, lost benefits, damages for mental and emotional distress, punitive damages for retaliatory conduct, and possibly other damages." [7]

The key case on this issue is *Chapman v. Powermatic, Inc.* [8] There, counsel for plaintiff advised a potential defendant that his client had incurred medical expenses in the amount of $67,196.48, which was in excess of the minimum jurisdictional amount in effect at that time. Plaintiff thereafter filed suit in state court. The petition did not reveal a specific amount of claimed damages. Defendant removed only after receiving a discovery response revealing that plaintiff suffered damages in excess of $800,000.00. The district court denied plaintiff's motion to remand. Affirming, the Fifth Circuit wrote:

> [T]he thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court. We adopt this rule because we conclude that it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know ... We believe the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount. [9]

In calibrating this bright line standard, the Fifth Circuit rejected a more lenient approach adopted by the Eastern District of Michigan, which required defendants to exercise "due diligence" in assessing whether the averments present in the initial pleading raised a federal claim. [10]

In the wake of *Chapman*, several district courts in this Circuit have remanded cases where no figures were found in the initial pleading, but "common experience" nevertheless dictated that the plaintiff would meet the threshold amount for federal jurisdiction. [11] While the Court finds

---

6. Pl.'s Pet. at 4.

7. Neither party disputes that an interrogatory answer constitutes "other paper" under 28 U.S.C. § 1446. *See Chapman v. Powermatic, Inc.,* 969 F.2d 160, 164 (5th Cir.1992) (construing "other paper" to "clearly refer to actions normally and logically occurring after the filing of the initial pleading," including plaintiff's answers to defendant's interrogatories), *cert. denied,* 507 U.S. 967, 113 S.Ct. 1402, 122 L.Ed.2d 774 (1993).

8. 969 F.2d at 164.

9. *Id.* at 163.

10. *See Mielke v. Allstate Insurance Co.,* 472 F.Supp. 851, 853 (E.D.Mich.1979).

11. *See, e.g., Century Assets Corp. v. Solow,* 88 F.Supp.2d 659, 661–62 (E.D.Tex.2000) (where petition sought damages to oil and gas leases and defendants knew amount of revenue that leases were producing, minimum jurisdictional amount was affirmatively revealed, and commenting that "defendants cannot convert the *Chapman* 'bright line' rule into a 'head in the sand' rule"); *Carleton v. CRC Indus., Inc.,* 49 F.Supp.2d 961, (S.D.Tex.1999) (holding that it was readily apparent from a common sense analysis of plaintiff's petition that more than $75,000 was in controversy even though no numbers were given); *Cross v. Bell Helmets, USA,* 927 F.Supp. 209, 213–14 (E.D.Tex. 1996) (same).

the common sense approach utilized in these cases persuasive, the approach encourages courts to dip into the briar patch of guesswork the *Chapman* court cautioned district courts to avoid.[12]

Central to the *Chapman* court's holding was its apprehension that courts could, and should, attempt to divine the subjective knowledge of a defendant. "[N]ot requiring courts to inquire into what a particular defendant may or may not subjectively know" promotes certainty and judicial efficiency.[13] In this instance, Plaintiff averred, on the face of her Petition, that her salary at the time of termination was $85,000.00 per year plus bonuses. However, guesswork is necessary for Wells Fargo to connect this averment to Staton's general request for "actual damages." Staton's interrogatory answer is by no means a paradigm of lucidity; it still requires Wells Fargo to link ¶ 5 of Staton's Petition to the "wages" averred in response to Wells Fargo's clear question seeking the "*specific* amount in controversy," which Staton did not answer. Nevertheless, the Court finds the interrogatory answer provided Wells Fargo with more specific insight into Staton's relief and provided a basis for removal. The Petition did not. This conclusion furthers *Chapman's* twin goals of certainty and efficiency.

The receipt of Staton's Answers and/or Objections to Defendant's First Set of Interrogatories, on October 25, 2001, triggered the removal statute's thirty day window for removal. Because removal irrefutably fell inside this window, Staton's Motion to Remand is **DENIED.**

**SO ORDERED.**

---

12. The issue is complicated by the fact that Rule 47 of the Texas Rules of Civil Procedure prohibits a party from specifying the amount of damages sought on an unliquidated claim until a special exception is filed. That exception can require pleading of the maximum sum claimed.

13. *Chapman,* 969 F.2d at 163.