**James BROWN, et al., Plaintiffs,**

v.

**TAX EASE LIEN INVESTMENTS, LLC, et al., Defendants.**

**Civil Action No. 3:14–CV–00335–JGH.**

United States District Court,
W.D. Kentucky,
at Louisville.

Signed Jan. 8, 2015.

John H. Dwyer, Jr., The Zielke Law Firm, Louisville, KY, for Plaintiffs.

Chadwick A. McTighe, Joseph Lee Hamilton, Marjorie Ann Farris, Stites & Harbison, PLLC, R. Eric Craig, Weber & Rose, PSC, David W. Brangers, Matthew J. Golden, Terri Ann Geraghty William Patrick O'Brien, Jefferson County Attorney, David J. Hale, U.S. Attorney Office, Louisville, KY, Ryan A. Schwartz Sherrow Sutherland & Associates, PSC, Shannon Upton Johnson, Zachary C. Webster, Overly & Johnson, LLC, Lexington, KY, Jerry N. Higgins, Terra L. Meek, Law Office of Jerry N. Higgins, PLLC, Floyds Knobs, IN, John E. Ramsey, The Deer Firm, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION AND ORDER

JOHN G. HEYBURN II, Senior District Judge.

Few things in life are certain, but among those few are death and taxes. At its core, this case is about taxation. More specifically, this case concerns what *should* happen when homeowners fail to pay their property taxes, and the Commonwealth of Kentucky sells their delinquent accounts to third party collectors. Sadly, while this labyrinthine case wound its way through the courts, one of the parties passed away—implicating the other of life's certainties. What is less certain, however, is whether this case even belongs in federal court. This case is a procedural quagmire: The Court faces several motions, including a motion to remand that the Court now addresses. In part due to the exceptionally skilled advocacy from counsel for both sides, the Court cannot say with certainty that this case should be in federal court. Therefore, for the reasons that follow, the Court remands the entire proceeding to the Jefferson Circuit Court.

I.

This case's factual background is voluminous; its procedural history is muddled. To avoid confusion,[1] only the facts necessary to understand this decision are provided here.

In Kentucky, failing to timely pay property taxes results in a certificate of delinquency, which functions as a lien on the relevant property. The certificate of delinquency secures the amount of the unpaid taxes, interest, and penalties. *See* KRS 134.122(2), 134.125(1), 134.420. Of course, the automatic issuance of a certificate of delinquency does not guarantee automatic payment of delinquent taxes.

---

1. Or, rather, as much confusion as can possibly be avoided in a case of this complexity.

This is problematic: When property taxes are not paid promptly, localities have less money for important services. So the legislature has authorized a system where the certificates are sold to third party collectors who pay the taxman the full amount owed upfront—including interest, penalties, and fees. In return, these collectors receive the statutory authority to enforce the certificates against property owners and recoup statutorily-authorized fees and charges. *See* KRS 134.452. This provides localities and the state with immediate funds to operate and the third party collectors with the chance to make a reasonable profit from collection. Tax Ease Lien Servicing, LLC ("TELS") is a Kentucky corporation operating as a third party collector.

This case began when TELS filed two actions in Jefferson Circuit Court to foreclose on two different properties owned by different individuals: Rose Harper and Deddo Goldsmith in one ("the Harper Claim") and Phillip and Karyn Julian in the other ("the Julian Claim"). James Brown, Theresa Cambron, Phillip Leigh, and Emil Walther III were not parties to either of these original actions. The Harper Claim was filed in February 2013; the Julian Claim was filed in March 2013. In April 2013, the Harper Claim defendants moved to file a class action counterclaim and to join Blue Grass Abstract, LLC ("Blue Grass"); Lien Data Services, LLC ("Lien Data"); Philip Migicovsky; Hayden, Craig & Grant, PLLC ("the Hayden Defendants"); and Richard Eric Craig as counterclaim defendants. Then, in May, the Harper Claim defendants and the Julian Claim defendants moved to consolidate their cases and to file a joint, amended counterclaim. The state court approved both the consolidation and the request for the first amended counterclaim. The parties filed cross motions to dismiss both the original claim and the amended counterclaim. After these issues were briefed, TELS moved in July 2013 to voluntarily dismiss its foreclosure complaints against Harper, Goldsmith, and the Julians. Importantly, the state court never ruled on this motion.

Towards the end of July 2013, Harper, Goldsmith, and the Julians moved for leave to file a second amended counterclaim to join Sherrow, Sutherland & Associates, PSC ("the Sherrow Defendants") as additional counterclaim defendants, to allow Brown to intervene as a counterclaimant, and to bring additional claims. As stated earlier, Brown was not an original party to either the Harper Claim or the Julian Claim. Yet he had previously entered into a forbearance agreement with a TELS affiliate, Tax Ease Lien Investments, LLC ("TELI"), over a certificate of delinquency from his unpaid property taxes. Brown—joined in his complaint at some point by Cambron, Leigh, and Walther III—asserted class action claims under the Racketeer Influenced and Corrupt Organizations Act and ancillary state law claims ("the Brown Claim").

The new Brown Claim alleged that TELS, TELI, Blue Grass, Lien Data, Migicovsky, the Hayden Defendants, Craig, and the Sherrow Defendants conspired to collect improper fees and charges related to the enforcement of certificates of delinquency TELS and TELI had purchased under Kentucky's tax collection scheme. Remember: third party collectors are entitled to certain fees and charges under Kentucky statutes when they successfully recoup delinquent taxes. The Brown Claim alleged that TELS, TELI, and their cohorts impermissibly inflated those fees and charges by doing unnecessary work and even claiming to have done work that never really occurred. As the Brown Claim styles it, Blue Grass and Lien Data—affiliate companies of TELS and TELI—are just shell companies organized

expressly to rack up unnecessary work and defraud delinquent taxpayers out of more money than they should have to pay under the relevant statutes.

After yet more motions, briefings, and oral arguments spanning from August 2013 to January 2014—during which time, the state court apparently dismissed Harper, Goldsmith, and the Julians' counterclaims against TELS in January 2014—TELS moved to sever the Brown Claim from the foreclosure actions in the Harper and Julian Claims. In March 2014, Harper, Goldsmith, the Julians, and Brown moved to file a third amended complaint to add Theresa Cambron, Phillip Leigh, and Emil Walther III as counterclaim plaintiffs. Each newcomer had failed to pay property taxes and had dealt with TELS, in some capacity, to resolve delinquencies. Through this motion to sever, TELS sought to create two independent cases. In one case—the consolidated Harper and Julian Claims—TELS would have remained the plaintiff, and the case would have revolved around TELS's foreclosure actions and been based entirely on state law. In the other case—the Brown Claim—TELS and its affiliates would have been defendants, and the case would have focused on RICO and other federal law claims. In theory, then, if the state court granted the TELS motion and *severed* the case, TELS could have removed the Brown Claim—but not the Harper and Julian Claims—to federal court.

Finally, in April 2014, the state court issued an order regarding TELS's motion to sever. Understanding its meaning is the key to this Court's current dilemma. The order read:

> The plaintiffs have moved to sever the consolidated foreclosure actions from what were previously the defendants' counterclaims before the Court dismissed them pursuant to its Opinion and Order of January 15, 2014; the Court now considers the counterclaim to be an *intervening complaint* filed pursuant to CR 24.02. Being sufficiently advised, the Court GRANTS the plaintiffs' motion to the extent that the intervening complaint and the consolidated foreclosure actions are hereby *bifurcated pursuant to CR 42.02.*
>
> The Harper Counterclaimants Motion to File a Third Amended Counterclaim/Intervening Complaint is SUSTAINED to the extent that the amended pleading purports to state claims on behalf of Intervenors Brown, Cambron, Leigh, and Walther. The motion is otherwise DENIED.
>
> IT IS SO ORDERED.

DN 25–9, Page ID # 1114 (emphasis added). After receiving this order, TELS removed this entire case to federal court. The parties now disagree about the import of the state court's words.

Brown *et al.* believe that this Court should remand the proceedings, in their entirety, to the state court. They note that TELS moved to voluntarily dismiss the Harper Claim and the Julian Claim—the foreclosure actions TELS had brought against Harper, Goldsmith, and the Julians. Had this motion been granted, TELS would no longer have been a plaintiff, but there would have still been removable claims against TELS that arose under federal law. Possibly, then, voluntary dismissal could have allowed TELS to remove. Brown *et al.* are quick to note that the state court never ruled on this motion. They also believe that the state court's order on the TELS motion to sever indicates that the state court did *not* actually sever the proceedings into separate cases, but rather ordered separate—that is, "bifurcated"—trials for efficiency's sake.

On the other hand, TELS and its affiliates seem to believe that the state court order's true effect was a complete "sever-

ance" of the proceedings into multiple cases. As such, they believe that there are now separate and distinct cases—still improperly consolidated—and that in one of those cases, TELS and its affiliates are purely defendants and may remove to federal court. Based on a 2011 amendment to 28 U.S.C. § 1441(c), they argue that they may remove to this Court a "civil action," including a consolidated case, that contains both a federal question and unrelated state law claims over which this Court has no jurisdiction. That is, they believe this consolidated case is removable in its entirety. Once the whole civil action is removed, the Court—they argue—should sever and remand the claims over which it lacks original or supplemental jurisdiction, pursuant to that 2011 amendment of § 1441(c).

## II.

Parties seeking removal to federal court must prove that removal is proper. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir.2000). They "must establish the jurisdictional requirements of [the federal] venue." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir.2007). Because removal raises federalism concerns, federal courts strictly construe removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Thus, federal courts resolve any doubt in favor of remanding to state court jurisdiction. *Id.* at 108–09, 61 S.Ct. 868; *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989) (citation omitted).

## A.

The state court's April 2014 order is of preeminent importance here. After all, TELS and its affiliates were the original plaintiffs. TELS brought the Harper Claim and the Julian Claim, foreclosure

actions, in state court. The federal removal statutes provide that "any civil action brought in State court ... may be removed *by the defendant or the defendants*," if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a) (emphasis added). The Sixth Circuit directs that this language "be interpreted narrowly, to refer to the defendants in the traditional sense of parties against whom the [original] plaintiff asserts claims." *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 462 (6th Cir.2002).

The Supreme Court has determined that Congress intended to preclude plaintiff-directed removal, based solely on counterclaims brought against the plaintiff, through its specific reference to "defendant or defendants." *See Shamrock Oil*, 313 U.S. at 104–08, 61 S.Ct. 868. For over 70 years courts have agreed that "a counterclaim ... defendant is not a 'defendant' who may remove the action to federal court." *In re Mort. Elec. Registration Sys., Inc.*, 680 F.3d 849, 853 (6th Cir.2012) (citing *Shamrock Oil*, 313 U.S. at 104–08, 61 S.Ct. 868). Both sides seem to agree that, usually, merely filing a counterclaim will not permit a plaintiff to remove. Here, though, the state court added a verbal twist: Its order explained that the court no longer considered the Brown Claim to be a "counterclaim." DN 25–9, Page ID # 1114. Instead, the state court considered it to be an intervention. *Id.* And the state court's re-appellation makes sense: A party cannot be a *counter*-claimant if there are no claims against that party to begin with. Brown, Cambron, Leigh, and Walther III were not original parties to the Harper and Julian Claims, so there necessarily were never any claims against them in this consolidated suit. Intervening complaints—even when they would have been removable if filed first—do not support removal. *Henderson v. S.*

*States Police Benevolent Ass'n., Inc.,* No. 1:02–cv–045, 2002 WL 32060139, at *6 (E.D.Tenn. Mar. 15, 2002). For TELS's removal to be proper, then, something about this case has to provide an end-around the usual rule.

 One possible end-around · could have been the voluntary dismissal of the Harper and Julian Claims. As this Court has addressed before, the well-pleaded complaint rule holds that plaintiffs are the masters of their complaints. *See Denzik v. Reg'l Airport Auth. of Louisville and Jefferson Cnty.,* 361 F.Supp.2d 659, 662 (W.D.Ky.2005). If plaintiffs choose. to base their complaints solely on state law, then so be it—without diversity jurisdiction, a state law complaint will remain in state court. Instances exist, however, where cases that were originally not removable may become removable through the voluntary actions of plaintiffs. *See Henderson,* 2002 WL 32060139, at *5. This makes logical sense. If a plaintiff voluntarily relinquishes its claims, that plaintiff devolves from the master of its complaint to the master of nothing.

Here, TELS filed its original foreclosure actions in the Harper Claim and the Julian Claim. Those cases were consolidated and Harper, Goldsmith, and the Julians filed counterclaims. Later, Brown *et al.* intervened with their own claims against TELS and its affiliates. And before its April 2014 order, the state court dismissed Harper, Goldsmith, and the Julians' counterclaims against TELS. If TELS had been allowed to voluntarily dismiss the Harper and Julian Claims—as it tried to do—TELS would have voluntarily gone from being the master of the lawsuit to a party completely on the defensive. In that instance, TELS's voluntary action would have implicitly realigned the parties so that TELS and its affiliates were defendants and Brown *et al.* the plaintiffs. Had that transpired, this Court would have felt more comfortable with its removal jurisdiction. Of course, that did not happen. Indeed, the state court never ruled ·on the TELS motion to voluntarily dismiss.

**B.**

And so, with no other avenue, TELS and its affiliates must rest on the words of the state court's April 2014 order. Words are important. But they are nothing more than stand-ins we use to symbolize something else—they are the principal carriers of meaning. Judges especially must choose their words carefully. After all, language—interpreting it, drafting it—is their currency.

Nevertheless, TELS seemingly believes that the state court's order—despite what it says on its face—had the real effect of severing the case and realigning the parties. But this interpretation goes against the state court's presumably deliberate word choice. TELS may be right that the state court intended a different outcome than its words suggest. Even a purposive reading of the order, though, does not clearly support this argument. Based on the state court order's entirety, this Court cannot conclude with any certainty that when the state court called for a bifurcation, it actually meant a severance.

TELS asked the state court to sever the Brown Claim—which, remember, was based on issues arising under federal law—from the consolidated Harper and Julian Claims, which were state law foreclosure actions. A "severance" is "[t]he separation of claims, by the court, of multiple parties either to permit *separate actions* on each claim or to allow certain interlocutory orders to become final." BLACK'S LAW DICTIONARY 1378 (7th ed.1999) (emphasis added). The "separate actions" portion is .most instructive: A severance necessarily implies a complete separation to the point of independence. That is, a

severance could take one non-removable action and separate it into multiple actions—the final result of each being entirely independent of the other—one of which could be removable. Indeed, this Court has previously intimated that the severance of a civil suit and subsequent party realignment can trigger the right to remove, even if procedural technicalities—like the issuance of a different civil action number—are not followed. *See Crump v. Wal–Mart Group Health Plan*, 925 F.Supp. 1214, 1219–20 (W.D.Ky.1996).

But "bifurcation" is *not* the same as "severance." They are two different words used by the bench and bar as terms of art to symbolize two different occurrences. Black's Law Dictionary does not define the stand-alone "bifurcation." Tellingly, readers must look to "trial" and its sub-entry, "bifurcated trial." *See* BLACK'S LAW DICTIONARY 1510. "Bifurcated trial" is defined as "[a] trial that is divided into two stages, such as for guilt and punishment or for liability and damages." *Id.* Thus, "bifurcation" implies a single action or case that is handled in multiple phases, usually for efficiency or fairness' sake. Though the phases are handled *separately*, the results are still dependent. For example, when a single case is bifurcated into a trial on liability and a trial on damages, the damages phase becomes moot if the first phase concludes there was no liability. The distinction between separate lawsuits (severance) and separate trials (bifurcation)

> exists and is significant.... Separate *trials* will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently. Unfortunately this distinction, clear enough in theory, is often obscured in practice since at times the courts talk of 'separate trial' and severance interchangeably.

*Phillips v. Unijax, Inc.*, 625 F.2d 54, 56 (5th Cir.1980) (citation omitted).

TELS and its affiliates believe that the state court "bifurcated" the Brown Claim, thereby creating an entirely separate *suit* where, through implicit realignment, Brown *et al.* were the plaintiffs to a complaint—independent from the original Harper and Julian Claims—against TELS and its affiliates. Based on the state court's word choices, this Court simply cannot agree. The state court was presented with a request to *sever* the various claims from each other. It explicitly granted the motion, but only to "the extent that the intervening complaint and the consolidated actions are hereby *bifurcated* pursuant to CR 42.02." DN 25–9, Page ID # 1114. (emphasis added).

The Kentucky procedural rule that the court referenced says:

> If the court determines that separate trials will be in furtherance of convenience or will avoid prejudice, or will be conducive to expedition and economy, it shall order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues.

CR 42.02. The state court's own language indicates it meant to have bifurcated trials; this Court does not read into the state court's language an intent to *sever* this proceeding into separate suits. The words the state court employed evidence its intent to maintain a single suit but try the various claims in phases for efficiency's sake. Moreover, earlier in its order, the state court clarified that it "consider[ed] the [Brown *et al.*] counterclaim to be an intervening complaint filed pursuant to CR 24.02." That procedural rule states:

> Upon timely application anyone may be permitted to intervene in an action: (a) when a statute confers a conditional

right to intervene or (b) when an applicant's claim or defense and the main action *have a question of law or fact in common.* When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

CR 24.02. (emphasis added). If the state court envisioned the Brown Claim as a separate, independent matter from the Harper and Julian Claims, its order did not make that clear. "If the state trial court had severed [the Brown Claim] [ ], thereby creating two separate lawsuits, [the TELS affiliates'] argument might have merit. But that is not what happened." *Unijax,* 625 F.2d at 56.

## III.

■ All things considered, this Court can only conclude that the state court bifurcated this suit into phases. It did not consider the Brown Claim wholly independent from the Harper and Julian Claims. Rather, it continued to call TELS and its affiliates "plaintiffs" and explicitly said that it granted their severance motion only to the extent that it was *bifurcating* the case to deal with the foreclosure actions and the Brown Claim in phases. The state court's choice to bifurcate instead of severing makes this action non-removable. *See Mullins v. Burke,* No. 7:10–144–KKC, 2011 WL 864496, at *2 (E.D.Ky. Mar. 9, 2011). The state court also noted that it no longer considered Brown *et al.* to be counterclaimants—instead, they were intervenors. And, again, intervening complaints do not support removal. *See Henderson,* No. 1:02–cv–045, 2002 WL 32060139, at *6. Federalism concerns obligate this Court to strictly construe the removal statutes. *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 923 (5th Cir.1997). So the Court hesitates to allow removal "by anyone other than a defendant 'in the traditional sense.'" *Boston Fin. Grp., LLC v. Nelson E. Clemmens,* 71 F.Supp.3d 711, 714, 3:14–CV–626–H, 2014 WL 6801435, at *2 (W.D.Ky. Dec. 2, 2014) (citing *Curry,* 301 F.3d at 462–63). The Court, therefore, holds that TELS and its affiliates have not established to a certainty that removal to this Court was proper, and so the Court resolves its doubts in favor of remand.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Motion to Remand of Brown *et al.* is SUSTAINED and the entirety of this case is REMANDED to the Jefferson Circuit Court.