Reston L. MOORE, Plaintiff,

v.

BIS SALAMIS, INC., BP Exploration & Production, Inc., and Mobil Oil Exploration and Producing Southeast, Inc., Defendants.

Civil Action No. 1:09–CV–1008.

United States District Court, E.D. Texas.

Sept. 20, 2010.

Charles Keith Kebodeaux, Attorney at Law, Casey Hugh Hargroder, Law Office of Keith Kebodeaux, Beaumont, TX, Kurt B. Arnold, Arnold & Itkin, LLP, Houston, TX, for Plaintiff.

Thomas J. Smith, James Terry Bailey, Galloway Johnson Tompkins Burr & Smith, Richard Austin Schwartz, Schwartz Junell Greenberg & Oathout, Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

MARCIA A. CRONE, District Judge.

Pending before the court is Plaintiff Reston Moore's ("Moore") Motion to Remand (# 8), wherein Moore seeks remand to state court of his action against Defendants Bis Salamis, Inc. ("BSI"), BP Exploration & Production, Inc. ("BP"), and Mobil Oil Exploration and Producing Southeast, Inc. ("Mobil") (collectively, "Defendants"). Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that remand is not warranted.

### I. *Background*

BP and Mobil jointly own and operate the "Thunder Horse," a floating offshore oil production facility located in the Gulf of Mexico. The Thunder Horse consists of a large production platform that floats atop four large, buoyant columns that are partially submerged beneath the surface. It is connected to the sea floor 6,000 feet below by a complex mooring system along with various pipelines and other drilling equipment that extend downward from the platform into the Outer Continental Shelf.

BSI is an independent contractor hired to perform various maintenance services on the Thunder Horse. BSI employed Moore as part of its workforce on the platform. Moore alleges that, on or about July 17, 2009, while performing his duties aboard the Thunder Horse, he was exposed to a chemical skin irritant that caused him to suffer a severe allergic reaction. Moore received initial care from onboard medical staff, who purportedly advised him that he should return to shore for further treatment. Nevertheless, Moore claims that his foreman instructed him to return to work immediately. The following day, while allegedly still suffering from the effects of the chemical exposure, Moore claims that he tripped on a piece of metal pipe protruding into a walkway and fell, injuring his neck, back, and right knee.

On November 6, 2009, Moore filed his original petition in the 60th Judicial District Court of Jefferson County, Texas, asserting claims against BSI, BP, and Mobil for unseaworthiness, maintenance and cure, and negligence pursuant to the Jones Act and general maritime law. On Decem-

ber 16, 2009, BSI removed the case to federal court on the basis of federal question jurisdiction, contending that Moore's claims arise under federal law, specifically the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1301 *et seq.* On January 1, 2010, Moore filed the instant motion to remand the case to state court.[1]

## II. *Analysis*

### A. *Removal and Remand*

■■■■ " 'Federal courts are courts of limited jurisdiction.' " *Rasul v. Bush,* 542 U.S. 466, 489, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)); *accord Johnson v. United States,* 460 F.3d 616, 621 n. 6 (5th Cir.2006); *McKee v. Kansas City S. Ry. Co.,* 358 F.3d 329, 337 (5th Cir.2004); *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir.), *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). " 'They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.' " *Rasul,* 542 U.S. at 489, 124 S.Ct. 2686 (quoting *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673 (citations omitted)). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery,* 243 F.3d at 916 (citing *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673); *see also Boone v. Citigroup, Inc.,* 416 F.3d 382, 388 (5th Cir.2005). In

an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 571, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004); *McDonal v. Abbott Labs.,* 408 F.3d 177, 182 (5th Cir.2005).

■■■■ When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002); *accord DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 n. 3, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006); *Gutierrez v. Flores,* 543 F.3d 248, 251 (5th Cir.2008); *In re Hot–Hed Inc.,* 477 F.3d 320, 323 (5th Cir. 2007); *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir.2005); *Boone,* 416 F.3d at 388; *Garcia v. Koch Oil Co. of Tex. Inc.,* 351 F.3d 636, 638 (5th Cir.2003). " 'This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute.' " *Roth v. Kiewit Offshore Servs., Ltd.,* 625 F.Supp.2d 376, 382 (S.D.Tex.2008) (quoting *Albonetti v. GAF Corp. Chem. Grp.,* 520 F.Supp. 825, 827 (S.D.Tex.1981)); *accord Crossroads of Tex., L.L.C. v. Great–West Life & Annuity Ins. Co.,* 467 F.Supp.2d 705, 708 (S.D.Tex.2006); *Smith v. Baker Hughes Int'l Branches, Inc.,* 131

---

1. As a preliminary matter, the court addresses Moore and BSI's separate motions to strike certain documents and/or statements filed in connection with the motion to remand. Moore objects to an employment application and payroll record attached as exhibits to BSI's response, which, Moore maintains, constitute hearsay documents. BSI subsequently filed a declaration by Chris Vincent, BSI's records custodian, which adequately addresses any hearsay concerns. Accordingly,

Moore's motion to strike these documents (# 13) is DENIED. Likewise, BSI objects to certain statements Moore made in his affidavit filed as an exhibit to his motion to remand. The contested statements relate to Moore's temporal connection with the Thunder Horse and do not concern any issue upon which the court bases the instant decision. Accordingly, BSI's motion to strike (# 10) is DENIED as moot.

F.Supp.2d 920, 921 (S.D.Tex.2001). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing 28 U.S.C. § 1441(a)); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 294 (5th Cir. 2010); *Gutierrez*, 543 F.3d at 251. "The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir.1997); *see* 28 U.S.C. § 1441(a). Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Gutierrez*, 543 F.3d at 251; *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007); *In re Hot–Hed Inc.*, 477 F.3d at 323; *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir.2002); *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir.2002).

■ Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1331, 1332; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); *Halmekangas*, 603 F.3d at 294; *McDonal*, 408 F.3d at 181; *Howery*, 243 F.3d at 914–15. In order to determine whether jurisdiction is present in a re-

moved action, the claims set forth in the state court petition are considered as of the date of removal. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 n. 2 (5th Cir.2007); *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 558 n. 1 (5th Cir.2004); *Manguno*, 276 F.3d at 723; *Howery*, 243 F.3d at 916; *Gebbia v. Wal–Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir.2000).

■ A federal question arises if a substantial, disputed question of federal law is presented on the face of the plaintiff's "well-pleaded complaint." *See Davila*, 542 U.S. at 207, 124 S.Ct. 2488; *Caterpillar Inc.*, 482 U.S. at 392, 107 S.Ct. 2425; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Gutierrez*, 543 F.3d at 251–52; *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir.), *cert. denied*, 553 U.S. 1080, 128 S.Ct. 2884, 171 L.Ed.2d 813 (2008); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir.2003). "Federal question jurisdiction under § 1331 extends to cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Frank*, 128 F.3d at 922; *see Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir.2008); *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir.), *cert. denied*, 537 U.S. 1046, 123 S.Ct. 623, 154 L.Ed.2d 519 (2002). "Under the 'well pleaded complaint' rule, ... a movant may not remove a case to federal court unless the plaintiff's complaint establishes that the cause of action arises under federal law." *Frank*, 128 F.3d at 922 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10–11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)); *accord*

*Arana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir.2003), *cert. denied,* 540 U.S. 1104, 124 S.Ct. 1044, 157 L.Ed.2d 889 (2004); *Howery,* 243 F.3d at 916 n. 12. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Pursuant to the well-pleaded complaint rule, a case does not arise under federal law and, thus, is not removable if the complaint asserts only state law causes of action. *See Kramer v. Smith Barney,* 80 F.3d 1080, 1082 (5th Cir.1996) (citing *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. 2841).

In the instant case, Moore contends that he has asserted a valid Jones Act claim, which precludes removal of this action from state court. Alternatively, Moore argues that the court does not have subject matter jurisdiction under the OCSLA because the Thunder Horse is a vessel to which the OCSLA does not apply. BSI responds that Moore's Jones Act claim is fraudulently pleaded because the Thunder Horse is not a vessel, and, thus, Moore does not qualify for seaman status. BSI further maintains that Moore's claims arise from his activities on a work platform attached to the Outer Continental Shelf, and, therefore, the OCSLA applies.

B. *The Jones Act*

■ The Jones Act, 46 U.S.C. §§ 30104–30105 (formerly 46 App. U.S.C. § 688), permits "[a] seaman injured in the course of employment" to sue his employer for negligence. 46 U.S.C. § 30104. The Jones Act is read to incorporate provisions of the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.*) that preclude re-

moval of actions filed in state court. 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."); 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees ... may not be removed to any district court of the United States."). Thus, Jones Act suits generally are not removable. *Holmes v. Atlantic Sounding Co., Inc.,* 437 F.3d 441, 445 (5th Cir.2006). Nevertheless, a federal court may allow removal of fraudulently pleaded Jones Act claims. *Id.; Fields v. Pool Offshore, Inc.,* 182 F.3d 353, 356 (5th Cir.1999), *cert. denied,* 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1073 (2000).

■ A Jones Act claim is fraudulently pleaded when there is no reasonable basis for predicting that the plaintiff might establish liability.[2] *Fields,* 182 F.3d at 357; *Burchett,* 48 F.3d at 176. The district court is permitted to conduct a "summary judgment-like procedure" to determine whether such a reasonable basis exists. *Holmes,* 437 F.3d at 445; *Fields,* 182 F.3d at 356. In making this determination, the district court must "resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Burchett,* 48 F.3d at 176; *accord Holmes,* 437 F.3d at 445; *Fields,* 182 F.3d at 356–57.

■ In order to establish liability under the Jones Act, the plaintiff must be a seaman. 46 U.S.C. § 30104(a); *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 560, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997); *Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 346 (5th Cir.1999). The

---

2. An additional ground for finding that a Jones Act claim is fraudulently pleaded is that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Fields,* 182 F.3d at 357 n. 2; *Burchett v. Cargill, Inc.,* 48 F.3d 173, 176 n. 1 (5th Cir.1995). This circumstance, however, does not exist here.

Jones Act, however, does not define "seaman." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 374 (5th Cir.2001), *cert. denied*, 535 U.S. 954, 122 S.Ct. 1357, 152 L.Ed.2d 353 (2002); *St. Romain v. Industrial Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir.), *cert. denied*, 531 U.S. 816, 121 S.Ct. 53, 148 L.Ed.2d 21 (2000). Instead, the task of determining which maritime workers are entitled to Jones Act protection is left to the courts. *Chandris*, 515 U.S. at 355, 115 S.Ct. 2172; *Roberts*, 266 F.3d at 374; *St. Romain*, 203 F.3d at 378. In 1995, the Supreme Court announced a two-part test for determining seaman status:

> First, ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.... Second, ... a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

*Chandris*, 515 U.S. at 368, 115 S.Ct. 2172 (citations and internal quotation marks omitted); *accord Harbor Tug & Barge Co.*, 520 U.S. at 554, 117 S.Ct. 1535; *Holmes*, 437 F.3d at 445 (5th Cir.2006); *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387 (5th Cir.2003); *Roberts*, 266 F.3d at 374; *St. Romain*, 203 F.3d at 378–79; *Hufnagel*, 182 F.3d at 346.

■■■ "The existence of a vessel is a fundamental prerequisite to Jones Act jurisdiction and is at the core of the test for seaman status." *Holmes*, 437 F.3d at 446 (internal quotations omitted); *accord Manuel v. P.A.W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 347 (5th Cir.1998). "Whether an unconventional craft is a vessel is an issue that is generally resolved as a matter of law, although ... 'at the margin, fact issues may be presented.'" *Holmes*, 437 F.3d at 445 (quoting *Manuel*,

135 F.3d at 347). Here, BSI contends the Thunder Horse is not a vessel within the meaning of the Jones Act, and, thus, Moore does not qualify for seaman status.

What constitutes a "vessel" under the Jones Act has escaped precise definition. *Holmes*, 437 F.3d at 446; *Michel v. Total Transp., Inc.*, 957 F.2d 186, 189 (5th Cir. 1992). Historically, courts have used the approach outlined by the United States Court of Appeals for the Fifth Circuit in *Gremillion v. Gulf Coast Catering Co.*, which focuses on the "purpose for which the craft is constructed and the business in which it is engaged." 904 F.2d 290, 293 (5th Cir.1990) (internal quotations omitted). Under this test, "[t]he greater the structure's resemblance to conventional seafaring craft, the greater the odds of securing vessel status." *Id.; see Holmes*, 437 F.3d at 446; *Fields*, 182 F.3d at 357. To determine the purpose for which a craft is constructed, courts have considered:

> (1) whether the owner assembled or constructed the craft to transport passengers, cargo, or equipment across navigable waters; (2) whether the craft is engaged in that service; (3) whether the owner intended to move the craft on a regular basis; (4) the length of time that the craft has remained stationary; and (5) the existence of other "objective vessel features," such as: (a) navigational aids; (b) lifeboats and other life-saving equipment; (c) a raked bow; (d) bilge pumps; (e) crew quarters; and (f) registration with the Coast Guard as a vessel.

*Holmes*, 437 F.3d at 446 (citing *Manuel*, 135 F.3d at 351; *Gremillion*, 904 F.2d at 293).

■■■ Courts have also recognized that certain dry docks and floating work platforms are not vessels within the meaning of the Jones Act. *Fields*, 182 F.3d at 357; *Manuel*, 135 F.3d at 349; *Gremillion*, 904 F.2d at 293. Accordingly, the Fifth Cir-

cuit has fashioned a separate test to distinguish these structures. *Holmes,* 437 F.3d at 446–47; *Fields,* 182 F.3d at 357–59; *Gremillion,* 904 F.2d at 293–294. Under this analytical framework, the court considers: (1) whether the structure is constructed to be used primarily as a work platform; (2) whether the structure is moored or otherwise secured at the time of the accident; and (3) whether, even though the platform is capable of movement and is sometimes moved across navigable waters in the course of normal operations, any transportation function is merely incidental to the platform's primary purpose. *Holmes,* 437 F.3d at 446–47; *Fields,* 182 F.3d at 358; *Gremillion,* 904 F.2d at 293–94.

Recently, however, the United States Supreme Court reexamined the definition of "vessel" in the context of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *Stewart v. Dutra Constr. Co.,* 543 U.S. 481, 488–97, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005). In *Stewart,* the Court stated that, for the purposes of the LHWCA, the term "vessel" is defined by 1 U.S.C. § 3 as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *Id.* at 489, 125 S.Ct. 1118. Consistent with this definition, the Court determined that any watercraft "practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment" is a vessel under the LHWCA. *Id.* at 497, 125 S.Ct. 1118. Accordingly, "[t]he question remains in all cases whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one." *Id.* at 496, 125 S.Ct. 1118 (internal quotations omitted).

In *Holmes,* the Fifth Circuit considered the extent to which *Stewart* altered its previous Jones Act analysis. 437 F.3d at 443. The Fifth Circuit concluded that "*Stewart*'s definition of 'vessel' applies equally to the Jones Act and the LHWCA ...." *Id.* at 448. Accordingly, a Jones Act "vessel" encompasses any watercraft that is "practically capable of maritime transportation ...." *Id.* Although it did not expressly overrule its prior jurisprudence regarding vessel status [3], the *Holmes* court acknowledged that "the class of waterborne structures that are vessels for ... Jones Act purposes is broader that we have heretofore held." *Id.* at 449.

The Fifth Circuit has yet to apply this analysis to floating platforms such as the Thunder Horse. In *Jordan v. Shell Oil Co.,* No. G–06–265, 2007 WL 2220986, at *1–2 (S.D.Tex. Aug. 2, 2007), however, a court in the Southern District of Texas determined that a similar structure did not qualify as a Jones Act vessel under *Holmes.* The plaintiff in *Jordan* brought a Jones Act claim for injuries sustained while he was working aboard the tension leg platform "URSA." *Id.* at *1. URSA, like the Thunder Horse, is a floating oil production facility located in the Gulf of Mexico. *Id.* URSA was towed to its designated production site and then outfitted to become attached to the ocean floor. *Id.* at *2. URSA is secured in place by sixteen "tendons" connected to pilings driven 396 feet into the subsoil and by six pipelines extending from the platform into the seabed. *Id.* at *2. Engineers specially designed URSA to remain in the same location for the term of its useful life, and any attempt to relocate it would require a massive engineering and deconstruction effort that could take up to two years to complete. *Id.* At the end of its anticipated life,

---

**3.** In fact, the *Holmes* court applied some of the pre-*Stewart* factors in its analysis of the facts before it. *See id.* at 449 (examining "objective vessel features," including raked bow, flotation tanks, and anchors).

URSA is planned to be disassembled and scrapped. *Id.* Upon consideration of these facts, the district court granted summary judgment in favor of the defendant, reasoning that "in its design and manifestation, [URSA] is a *permanent structure* on the seabed" and, thus, not practically capable of maritime transportation. *Id.* (emphasis in original).

The court finds the reasoning in *Jordan* persuasive and deems the situation in that case analogous to the one presented here.[4] The unchallenged declaration and deposition testimony of Michael O'Donnell ("O'Donnell"), BP's Offshore Installation Manager, establishes that the Thunder Horse, like URSA, was initially towed into position in the Gulf of Mexico; however, once on location it was extensively modified to become permanently fixed in place. Similar to URSA, the Thunder Horse is fastened to the ocean floor by 16 chain mooring lines connected to 16 "suction piles" that are 19 feet in diameter and are driven 90 feet into the subsoil. The Thunder Horse is also tethered to the seabed by two production pipelines and an assortment of risers, water injection lines, and umbilical control lines.

While the Thunder Horse's attachment to its current location is, in some respects, less extensive than URSA's (*e.g.,* the Thunder Horse's 16 pilings are embedded 90 feet into the sea floor as opposed to 396 feet, and the Thunder Horse is tethered by two production pipelines rather than six), relocating the Thunder Horse would, nonetheless, be a monumental and protracted undertaking. The complex melange of drilling equipment descending from the platform to the ocean bottom would have to be disconnected, and the massive mooring system would have to be removed. O'Donnell's undisputed declaration establishes that the cost to complete such a project is conservatively estimated at between $400 and $500 million. Furthermore, even if successfully disconnected from the seabed, it still is uncertain whether the Thunder Horse could be safely transported to a new location. According to O'Donnell, the Thunder Horse was "not designed to go through the water," and such a move would require extensive planning and alteration of the platform as it currently exists. Consequently, it is undisputed that the Thunder Horse was designed to remain at its current location for the duration of its service life—approximately 25 years—after which it will most likely be disassembled and scrapped. Under these circumstances, the court finds that the Thunder Horse is a permanent structure attached to the seabed and, thus, not *practically* capable of maritime transportation. *See id.*[5]

4. The court is aware that the court in *Jordan* carried the issue of URSA's vessel status to trial before making its determination, noting that "[t]he pre-trial Record was still permeated with factual nuances regarding URSA's design that would cause reasonable minds applying the *Stewart* definition to differ." *Jordan,* 2007 WL 2220986, at *1. Here, however, the relevant facts concerning the Thunder Horse's design are available in the record and are not disputed by the parties.

5. Furthermore, it seems clear that the Thunder Horse would not qualify for vessel status under the pre-*Holmes* analysis because, using the three-factor test outlined in *Gremillion* (pages 604-05, *infra*), it is apparent that the facility is a work platform to which the Jones Act does not apply. *Fields,* 182 F.3d at 358; *Gremillion,* 904 F.2d at 293–94. First, the Thunder Horse is committed to oil exploration and production within a static location for the entire term of its useful life; thus, the primary purpose of the Thunder Horse is "to serve as a work platform in a specific, fixed location for the foreseeable future." *Fields,* 182 F.3d at 358. Secondly, the Thunder Horse was not only moored at the time of Moore's accident, but was and continues to be "secured using an elaborate system that guarantees movement will be a difficult and expensive undertaking." *Id.* Finally, as discussed in greater detail below, although the Thunder Horse is capable of a very limited

In support of his motion to remand, Moore points to a number of cases from within the Fifth Circuit, which he contends demonstrate that semi-submersible [6] drilling rigs have historically been considered vessels within the meaning of the Jones Act. *See, e.g., Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393, 394 n. 1 (5th Cir.1991) ("We have consistently applied general maritime law and the Jones Act ... to accidents aboard special-purpose watercraft such as ... semi-submersible ... rigs."), *cert. denied,* 502 U.S. 1033, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992); *Houston Oil & Minerals Corp. v. American Int'l Tool Co.,* 827 F.2d 1049, 1052–53 (5th Cir.1987) ("Our cases applying the Jones Act and general maritime law to accidents aboard ... semi-submersible ... and other movable rigs ... are legion."), *cert. denied,* 484 U.S. 1067, 108 S.Ct. 1031, 98 L.Ed.2d 995 (1988); *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1214 n. 5 (5th Cir.1986) (concluding that the semi-submersible vessel involved the case was "indisputably a vessel"); *Case,* 2008 WL 2714124, at *6 ("[S]emisubmersible drilling rigs are generally considered vessels under the Jones Act"). Moore maintains that the Thunder Horse is a semi-submersible drilling rig and, there-fore, a vessel even under the less expansive pre-*Holmes* definition.

Historically, however, courts have predi-cated the vessel status of semi-submersi-bles and other specialty purpose water-craft on their highly mobile and transient nature. *See Fields,* 182 F.3d at 358 ("As we have taken care to point out, while [specialized mobile drilling craft] may stay on a particular site, they always move on to the next location when their work is done."); *Manuel,* 135 F.3d at 349 ("In the special purpose craft cases ... the trans-portation function of the structure was more than merely incidental to its pur-pose."); *Colomb v. Texaco, Inc.,* 736 F.2d 218, 221 (5th Cir.1984) (finding a specialty purpose craft to be a vessel because it was highly mobile, routinely floated to various drilling locations, and stayed at fixed loca-tions for short periods of time before being refloated and towed to the next job site); *Case,* 2008 WL 2714124, at *6 (stating that semi-submersible drilling rigs are general-ly considered vessels because they are moved on a regular basis). By contrast, the Thunder Horse is bound to a particular location for the entirety of its useable life. Although it may share other characteris-tics with semi-submersible rigs, the Thun-der Horse is not practically capable of the

---

range of movement in order to service several closely-packed wellheads within its designat-ed production area, this constrained mobility is merely incidental to its primary function as a work platform. *Id.* at 359. The court ac-knowledges that the *Holmes* decision expand-ed the type of watercraft that fall under the Jones Act definition of "vessel" and explicitly stated that a structure's primary purpose or state of transit at a particular moment is no longer determinative of vessel status. *Holmes,* 437 F.3d at 448. Nevertheless, to the extent that this circuit's prior jurispru-dence concerning Jones Act vessels remains applicable, the court finds that *Gremillion's* three-factor test is easily satisfied in this case. *See Fields,* 182 F.3d at 358–59 (holding that a floating structure with a mooring system and infrastructure nearly identical to the Thunder Horse was a work platform under the three-factor test); *Case v. Omega Natchiq, Inc.,* No. H–08–0835, 2008 WL 2714124, at *7–8 (S.D.Tex. July 10, 2008) (post-*Holmes* case applying the three-factor test to determine that a similarly situated floating structure was a work platform); *Mizell v. BP Am. Prod. Co.,* No. 3:07–CV–185, 2008 WL 872279, at *5 (S.D.Miss. Mar. 26, 2008) (another post-*Holmes* case applying the three-factor test to determine that a similar structure was a work platform).

**6.** In his deposition testimony, O'Donnell de-fines "semi-submersible" as a floating struc-ture with "a hull design that has a pontoon ring and columns coming off the pontoon ring with a deck on top of it."

regular and extensive movement that typically characterizes these types of watercraft.

Nevertheless, Moore points out that the Thunder Horse is capable of a limited range of movement and, in fact, moves on occasion. O'Donnell's testimony confirms that, while in production, the Thunder Horse is capable of lateral movement within a 350–foot maximum radius from Drill Center 41, located directly below the Thunder Horse platform, for the purpose of servicing a group of closely-packed wellheads around the drill center. Because the Thunder Horse has no system of self-propulsion, it moves within these operational parameters by manipulating the chain mooring system connecting it to the sea floor. While not in production, the Thunder Horse is capable of lateral movement within a 700–foot maximum radius of Drill Center 41, but has moved only once, by tow, within this outer perimeter.

Courts have found comparably limited ranges of movement by similarly situated floating platforms to be purely incidental and, thus, insufficient to confer vessel status. See Fields, 182 F.3d at 359 (holding that a floating oil production structure's ability to move within a 250–foot radius of the drill center in order to service other wellheads within its production area was "not inconsistent with work platform status"); Mizell, 2008 WL 872279, at *5 (holding that a floating production unit's ability to move 195–feet in any direction as a precaution against hurricanes insufficient to confer vessel status); see also Jordan, 2007 WL 2220986, at *2 (concluding that URSA was not a vessel despite the fact that the parties had admitted in earlier filings (see Defendants' Joint Response to Plaintiff's Additional Briefing at *5, Jordan v. Shell Oil Co., G–06–265, 2006 WL 4989018 (S.D.Tex. Nov. 22, 2006) document no. 28) that URSA was capable of lateral movement nearly equivalent to that of the Thunder Horse). Consistent with these authorities, the court finds that the Thunder Horse's constrained range of motion is merely incidental to its function as a work platform and, thus, does not render it practically capable of maritime transportation.

Accordingly, because of its extensive attachment to the ocean floor and long-term commitment to a single location, the court finds that the Thunder Horse is a work platform that is permanently attached to the seabed and not a Jones Act vessel. Because the Thunder Horse is not a vessel, Moore is not a Jones Act seaman and, thus, has no possibility of prevailing on his Jones Act claims. For these reasons, the court concludes that Moore's Jones Act claim is fraudulently pleaded and does not prevent removal of this case.

C. *The Outer Continental Shelf Lands Act*

■ The absence of a valid Jones Act claim does not automatically make removal proper. Defendants must affirmatively demonstrate that the court has federal subject matter jurisdiction over the case to support removal. See Hufnagel, 182 F.3d at 348. In its notice of removal, BSI relies on federal question jurisdiction under the OCSLA as its basis for subject matter jurisdiction.

■ The OCSLA provides:
The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the [O]uter Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of trans-

porting such resources, to the same extent as if the [O]uter Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

43 U.S.C. § 1333(a)(1). "The purpose of the [OCSLA] [is] to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the [O]uter Continental Shelf." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969); *accord Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,* 589 F.3d 778, 784 (5th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 3386, 177 L.Ed.2d 302 (2010). The act expressly grants subject matter jurisdiction to the federal courts over cases and controversies "arising out of or in connection with . . . any operation conducted on the [O]uter Continental Shelf which involves exploration, development, or production of the minerals" from the Outer Continental Shelf. 43 U.S.C. § 1349(b)(1); *accord Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co., Inc.*, 448 F.3d 760, 768 (5th Cir.), *cert. denied,* 549 U.S. 1053, 127 S.Ct. 670, 166 L.Ed.2d 515 (2006). For the OCSLA to apply to an action, the plaintiff need not specifically assert any claims under the OCSLA in the complaint; rather, the OCSLA governs if the facts alleged within the complaint fall within the statutory grant of jurisdiction. *Nase v. Teco Energy Inc.,* 347 F.Supp.2d 313, 317 (E.D.La.2004) (citing *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154–55 (5th Cir.1996)).

Moore contends that the OCSLA does not apply to his claims because the Thunder Horse is a vessel, which is specifically excluded from § 1333(a)(1)'s grant of jurisdiction. Moore maintains, therefore, that this court does not have subject matter jurisdiction over the instant case. As discussed above, however, the Thunder Horse is not a vessel, but is a work platform attached to the seabed. Indeed, it is undisputed that the Thunder Horse is attached to the Outer Continental Shelf and is engaged in the exploration, development, or production of mineral resources therefrom. Accordingly, the Thunder Horse falls within the OCSLA's jurisdictional grant. *See* 43 U.S.C. § 1333(a)(1), 1349(b)(1); *Dahlen v. Gulf Crews, Inc.,* 281 F.3d 487, 492 (5th Cir.), *cert. denied,* 537 U.S. 1045, 123 S.Ct. 621, 154 L.Ed.2d 518 (2002). Because the OCSLA applies, the instant case presents questions of federal law. Thus, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and removal is proper.

### III. *Conclusion*

Based on the foregoing analysis, Moore is not a Jones Act seaman because the Thunder Horse is not a vessel within the meaning of the act. Accordingly, Moore has no possibility of prevailing on his Jones Act claim, and this claim does not prevent removal of the instant case. Furthermore, because the Thunder Horse is a work platform that is permanently attached to the Outer Continental Shelf and was conducting activities thereon for the exploration, production, and/or development of mineral resources at the time of Moore's injury, the OCSLA applies to this case and provides this court with subject matter jurisdiction. Accordingly, removal was proper, and Moore's motion to remand is denied.