# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 6, 2014

Lyle W. Cayce
Clerk

No. 13-30587
Summary Calendar

WARRIOR ENERGY SERVICES CORPORATION; FASTORQ, L.L.C.; STABIL DRILL SPECIALTIES, L.L.C.; WORKSTRINGS INTERNATIONAL, L.L.C.; SUPERIOR ENERGY SERVICES, L.L.C., doing business as Superior Completion Services,

Plaintiffs - Appellants

v.

ATP TITAN M/V, its equipment, appurtenances, furniture, etc., in rem; ATP TITAN, L.L.C., in personam,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2297

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Warrior Energy Services Corporation, Fastorq, L.L.C., Stabil Drill Specialties, L.L.C., Workstrings International, L.L.C., and Superior Energy Services, L.L.C., d/b/a Superior Completion Services (collectively, "Superior")

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30587

appeal the order of the district court dismissing their claims against ATP Titan M/V (the "TITAN") and ATP Titan, L.L.C. ("ATP").  We AFFIRM.

## I.    Background

The TITAN is a floating oil and gas production facility moored on the Outer Continental Shelf, miles offshore of Louisiana.  The TITAN is owned by ATP and is operated by ATP Oil & Gas.  Superior contracted with ATP Oil & Gas to provide certain services and supplies to the TITAN to support its operations.  After Superior performed under the contract, ATP Oil & Gas declared bankruptcy, and Superior was not paid.

Superior filed suit, asserting maritime liens and, in the alternative, state law privileges against the TITAN.[1]  Superior also sought declaratory relief against both the TITAN and ATP.  ATP and the TITAN moved to dismiss, asserting that the district court lacked *in rem* admiralty jurisdiction over the TITAN and that Superior had failed to state a claim against ATP.  After jurisdictional discovery, the district court granted the motion and Superior appealed.[2]

---

[1]  The only jurisdictional basis asserted for the state law claims was supplemental jurisdiction under 28 U.S.C. § 1367;  Superior does not argue that the district court had original jurisdiction over the state law claims against the TITAN. With respect to its claims against ATP, Superior conceded in the district court that those claims relied upon TITAN's status as a vessel.  Thus, if TITAN is not a vessel, Superior conceded that it does not have a claim against ATP.  Before our court, it does not argue any basis for liability against TITAN or ATP that does not turn on the classification of the TITAN as a vessel or not.

[2] Superior argues that the district court erred in denying its motion for leave to file a sur-reply because ATP and the TITAN raised new arguments in their reply addressing a recently decided case, *Lozman v. City of Riviera Beach, Florida,* 133 S. Ct. 735 (2013). However, "[s]urreplies are heavily disfavored by courts." *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011). The district court did not abuse its discretion in denying Superior leave to file a sur-reply, especially as Superior had previously addressed *Lozman* in its memorandum in opposition.

No. 13-30587

## II.     Standard of Review

We review a district court's dismissal for lack of subject matter jurisdiction *de novo*.  *See Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).  The burden of proof lies with the party asserting jurisdiction, who must prove "by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence."  *Id.*  A court can find a lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).[3]

We review a district court's dismissal for failure to state a claim *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).  Dismissal is appropriate where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and thus does not "raise a right to relief above the speculative level," *id.* at 555.  This standard is met where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.     Discussion

Superior seeks to enforce a maritime lien against the TITAN pursuant to the Maritime Lien Act, 46 U.S.C. §§ 31301, *et seq.*, which states that "a person providing necessaries to a *vessel . . .* has a maritime lien on the vessel [and] may bring a civil action *in rem* to enforce the lien."  46 U.S.C. § 31342(a)

---

[3]   We reject Superior's invitation to assume hypothetical jurisdiction in order to reach the merits.  *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998).

(emphasis added). Federal jurisdiction under the Maritime Lien Act therefore turns in this case on whether the TITAN is a "vessel." *See Lozman*, 133 S. Ct. at 745 ("A court's jurisdiction, *e.g.*, admiralty jurisdiction, may turn on application of the term 'vessel.'").

A vessel is defined as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. This includes "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 497 (2005). The dispositive question is "whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one." *Id.* at 496 (internal quotation marks omitted).

We conclude that the district court did not err in concluding as a matter of law that the TITAN does not constitute a vessel based upon our prior precedent addressing similar structures. First, the TITAN is moored to the floor of the Outer Continental Shelf by twelve chain mooring lines connected to twelve anchor piles, each weighing 170 tons and each embedded over 200 feet into the seafloor, and by an oil and gas production infrastructure. *See Stewart*, 543 U.S. at 494 ("[A] watercraft is not capable of being used for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement.") (internal quotations omitted); *see also Mendez v. Anadarko Petroleum Corp.*, 466 F. App'x 316, 317 (5th Cir. 2012) (unpublished) (concluding that similarly moored spar was not a vessel),[4] *cert. denied*, 133 S. Ct. 979 (2013); *Fields v.*

---

[4] Superior contends that the district court erred in relying on the unpublished opinion in *Mendez*. While *Mendez* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006). Given the factual similarities between this case and *Mendez*, we agree with the district court that *Mendez* is persuasive.

*Pool Offshore, Inc.*, 182 F.3d 353, 355 (5th Cir. 1999) (same).  Second, the TITAN has not been moved since it was constructed and installed at its current location in 2010.  *See Lozman*, 133 S. Ct. at 741 (concluding that houseboat that had been moved only four times in seven years was not a vessel); *see also Mendez*, 466 F. App'x at 317 (finding that spar that had been moored in one location for nine years was not a vessel).  Third, the TITAN has no means of self-propulsion, apart from repositioning itself within a 200-foot range by manipulating its mooring lines.  *See Fields*, 182 F.3d at 355, 359 (concluding that spar that had no means of self-propulsion, but could reposition itself within a 250-foot range by manipulating its mooring lines, had "extremely limited and purely incidental mobility" and was not a vessel).  Fourth, moving the TITAN would require approximately twelve months of preparation, at least fifteen weeks for its execution, and would cost between $70 and $80 million.  *See Mendez*, 466 F. App'x at 319 (concluding that spar was not a vessel where relocating it would take nearly two months and would cost $42 million); *Moore*, 748 F. Supp. 2d at 606 (same).  In light of these characteristics, we agree with the district court that the TITAN is not practically capable of transportation on water and is therefore, as a matter of law, not a vessel.[5]  *See Stewart*, 543 U.S. at 497.

Finally, Superior sought a declaratory judgment that the TITAN is a vessel and that Superior has valid maritime liens against the TITAN.  Because we conclude that the TITAN is not a vessel, Superior has failed to state a claim for declaratory relief.

---

[5] In *Lozman*, the Supreme Court articulated a standard to be applied in "borderline cases where 'capacity' to transport over water is in doubt."  133 S. Ct. at 745.  This is not a "borderline case."  Application of the *Lozman* "reasonable observer" test would nonetheless lead to the same result, as, for the reasons already enumerated, no reasonable observer, looking to the TITAN's physical characteristics and activities, would consider it designed to a practical degree for water transportation.  *See id.* at 741.

No. 13-30587

AFFIRMED.