# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2020

Lyle W. Cayce
Clerk

No. 20-30157
CONSOLIDATED WITH
No. 20-30515

RedHawk Holdings Corporation,

*Plaintiff—Counter Defendant—Appellant*,

*versus*

Daniel J. Schreiber Trustee, of the Schreiber Living Trust - DTD 2/8/95; Daniel J. Schreiber,

*Defendants—Counter Claimants—Appellees.*

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-819

Before Jones, Haynes, and Ho, *Circuit Judges*.

Per Curiam:*

After RedHawk and Schreiber entered into a settlement agreement to resolve a business dispute, Schreiber moved to enforce that agreement

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30157
c/w No. 20-30515

because RedHawk had allegedly defaulted on its obligations. The district court granted Schreiber's motion, and RedHawk appealed. The district court abused its discretion by granting Schreiber's motion to enforce the settlement agreement based exclusively on arguments and evidence presented for the first time in Schreiber's reply brief without allowing RedHawk to file a surreply. Accordingly, we vacate the order and remand to the district court.

## I.

This case arose from a business venture gone awry between Daniel J. Schreiber, the former CEO and director of RedHawk Holdings Corporation, and G. Darcy Klug, the CFO and majority shareholder of both RedHawk and Beechwood Properties, L.L.C. The underlying suit involved claims against Schreiber by RedHawk and Beechwood for securities fraud under Sections 10B, 18, and 20 of the Securities Exchange Act of 1934 and SEC Rule 10b-5; fraud under state law; breach of contract; unjust enrichment; and breach of fiduciary duties. Schreiber filed counterclaims alleging an unlawful interference with his ability to transfer his shares of RedHawk stock. The district court granted Schreiber's motion for summary judgment, dismissing RedHawk's and Beechwood's claims. *RedHawk Holdings Corp. v. Schreiber*, 2018 WL 4963597, at *1–5 (E.D. La. Oct. 15, 2018). The district court then denied RedHawk and Beechwood's motion for a new trial and motion to dismiss Schreiber's counterclaims for lack of subject matter jurisdiction.[1]

In February 2019, shortly before trial on the counterclaims was set to begin, the parties decided to settle, and the district court dismissed the case, retaining jurisdiction to enforce any settlement agreement. The parties then signed the settlement agreement one month later. Under that settlement agreement, Schreiber would transfer all his RedHawk stock back to RedHawk. In exchange, RedHawk agreed to an immediate payment of

---

[1] Beechwood Properties is not party to this appeal.

$250,000 to Schreiber and issued him two non-interest-bearing promissory notes, each in the amount of $200,000, with the first due and payable on or before September 6, 2020, and the second due and payable on or before September 5, 2021.

The settlement agreement also included an acceleration clause. In addition to a 30-day grace period following any RedHawk default, after which "all amounts due on the Notes will be accelerated and become immediately due and payable[,]" plus 18% interest and the greater of reasonable attorneys' fees or 10% of the amount due, the agreement contained the following provision:

> While any amounts are due to Schreiber, [RedHawk] agrees that if it issues any shares of any series or class for cash, it shall use 50% of all monetary proceeds received from the issuance to reduce the debts owed to Schreiber.

On September 16, 2019, RedHawk issued an SEC Form 8-K and a press release showing that it had "completed the sale of $500,000 in aggregate principal amount of new convertible notes," which would mature in five years and would be convertible into shares of RedHawk common stock. It also announced an issuance of "a number of warrants . . . exercisable [in ten years] for the purchase of an aggregate of 12,500,000 shares" of RedHawk common stock. Shortly thereafter, Schreiber informed RedHawk that this action triggered the settlement agreement's acceleration clause and that RedHawk was now in default by failing to pay him 50% of the proceeds from the sale.

After RedHawk denied that the above transactions triggered the acceleration clause and that it defaulted, Schreiber filed in the district court a motion to enforce the settlement agreement. He argued that RedHawk's sale of the convertible notes and warrants constituted a sale of shares for cash and that RedHawk owed him 50% of the monetary proceeds from the sale. Because the 30-day grace period had expired, Schreiber requested the full accelerated amount of the two notes ($400,000), plus the 18% interest and

the greater of attorneys' fees or 10% of the amount due. RedHawk filed a response in opposition to the motion, and Schreiber was later granted leave to reply. RedHawk opposed Schreiber's motion to file a reply and requested an opportunity to submit a surreply brief should the court grant Schreiber's motion. The district court never gave RedHawk this opportunity.

The district court granted Schreiber's motion to enforce the settlement agreement. It first found that "convertible notes and warrants are not a series or class of shares" triggering the settlement agreement's acceleration clause. Therefore, RedHawk's September 16, 2019, sale of convertible notes and warrants did not place it in default. However, the district court "identif[ied] multiple instances in which RedHawk has converted notes into equity by issuing shares"—instances which were brought to the court's attention for the first time in Schreiber's reply brief. Because RedHawk did not use any of the proceeds from these transactions to reduce its debt to Schreiber, it was in default of the settlement agreement. The district court later awarded Schreiber $519,495.78, which included the entire accelerated amount due on the notes, 18% interest, and attorneys' fees.

RedHawk appealed on the grounds that (1) the district court abused its discretion by granting Schreiber's motion to enforce the settlement agreement based on new arguments and evidence that Schreiber raised for the first time in his reply brief and to which the district court denied RedHawk an opportunity to respond, and (2) that the district court's ruling relied on clearly erroneous facts and was substantively mistaken.

## II.

Jurisdiction in this court is proper under 28 U.S.C. § 1291. The district court entered its order granting the motion to enforce the settlement on March 3, 2020. Schreiber filed a notice of appeal three days later, on March 6, but before the district court granted Schreiber's motion for money judgment, which was not entered until July 16, 2020. To obviate any jurisdictional concerns regarding the prematurity of its initial notice of

appeal, RedHawk filed on August 14, 2020, a notice of appeal to the district court's entry of money judgment. It moved without objection to consolidate Case No. 20-30515 with Case No. 20-30157, and this Court granted the motion on September 25, 2020. The appeals arise from the same underlying case, and we have jurisdiction over both appeals.

## III.

We review a district court's grant of a motion to enforce a settlement agreement for abuse of discretion. *Bell v. Schexnayder*, 36 F.3d 447, 450 (5th Cir. 1994). A district court's decision to grant or deny a party's request to file a surreply is also reviewed for an abuse of discretion. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).

## IV.

Generally, neither this court nor the district courts of this circuit will "review arguments raised for the first time in [a] reply brief." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989) (refusing to entertain arguments raised for the first time in appellant's reply brief); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (district court following the "court's practice of declining to consider arguments raised for the first time in a reply brief"). On occasion, however, a district court may consider arguments and evidence raised for the first time in a reply brief without abusing its discretion "so long as it gives 'the non-movant an adequate opportunity to respond prior to a ruling.'" *Thompson v. Dall. City Attorney's Office*, 913 F.3d 464, 471 (5th Cir. 2019) (quoting *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)). And while there is no right to file a surreply and surreplies are "heavily disfavored," a district court abuses its discretion when it denies a party the opportunity to file a surreply in response

to a reply brief that raised new arguments and then relies solely on those new arguments it its decision. *Compare Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (noting that courts "heavily disfavor[]" surreplies), *and Austin*, 864 F.3d at 336 (finding that the district court did not abuse its discretion by denying a party's motion to file a surreply because the other party "did not raise any new arguments in its reply brief"), *with Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191–92 (10th Cir. 2006) ("Our case law makes clear that a district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief.") (alteration in original)).

In his opening brief in support of his motion to enforce the settlement agreement, Schreiber pointed to RedHawk's September 16, 2019, announcement of the sale of $500,000 in convertible notes and the issuance of warrants as the transaction triggering the settlement agreement's acceleration provision. He argued that RedHawk's "sale of convertible notes and stock warrants for $500,000 constitutes an issuance of 'any shares of any series or class for cash,'" which obligated RedHawk to make payments to reduce the debt it owed to Schreiber under this provision. He contended further that adopting RedHawk's interpretation of "any shares of any series or class for cash"—specifically that convertible notes and warrants are not shares because the holder of these instruments can only convert the notes into or purchase shares at a later date—would lead to the "absurd" result of "allow[ing] [RedHawk] to raise significant amounts of funding with no obligation to reduce its debt to Schreiber," contravening the settlement agreement's primary purpose of "ensur[ing] that Schreiber received the full monetary amounts promised to him." In addition, Schreiber attached to his motion RedHawk's 61-page 2019 Annual Report (SEC Form 10-K), which reported this and other transactions. But his opening brief mentions—and

only in a footnote—just one other transaction: the May 2019 sale of a $50,000 convertible note to a former RedHawk director.

RedHawk devoted nearly the entirety of its response to Schreiber's motion rebutting the contention that convertible notes and warrants are "shares" triggering the acceleration provision and refuting the argument that its interpretation will lead to the absurd consequences Schreiber predicted. It did so solely in the context of the September 16 transaction. Further, it viewed Schreiber's argument that convertible notes and warrants qualify as shares under Louisiana law as so devoid of merit that it predicted Schreiber might raise new arguments in a reply so that RedHawk would have no opportunity to effectively respond.

The district court then granted Schreiber's motion for leave to reply. And while he reiterated some of the arguments made in his opening brief, he also raised new arguments and discussed new evidence for the first time. First, Schreiber cited to additional transactions in RedHawk's 2019 Annual Report allegedly showing that holders of convertible notes converted them into shares of RedHawk common stock. Next, he pointed to RedHawk's most recent quarterly report—its November 2019 SEC Form 10-Q—stating that additional convertible note holders would be converting their notes into shares by the end of 2019. Again, while the Annual Report detailing some of these transactions was attached to Schreiber's original brief, the specific transactions were not discussed, and the SEC Form 10-Q was not attached. Third, Schreiber added a new argument that the purpose of the settlement agreement's acceleration provision was "to protect Schreiber from RedHawk's continued trend of engaging in transactions that would dilute the value of [RedHawk]'s stock."

One day after Schreiber submitted his motion for leave to file his proposed reply brief, RedHawk submitted to the district court its opposition to that motion, directing the court's attention to the new arguments and evidence Schreiber used for the first time in his reply brief. RedHawk

maintained that it possessed additional evidence that would undermine Schreiber's new contentions.    Nevertheless, the district court, while accepting RedHawk's argument that "convertible notes and warrants are not a series or class of shares" and that the September 16, 2019, sale of convertible notes and issuance of warrants "did not constitute an issuance of shares" for the purposes of triggering the acceleration provision, granted Schreiber's motion to enforce the settlement agreement.  It found RedHawk in default on the ground that its "most recent [Annual Report] and 10-Q filings . . . identify multiple instances in which RedHawk has converted notes into equity by issuing shares rather than paying the amounts due on notes." Its finding relies exclusively on the transactions Schreiber raised for the first time in its reply brief.  The district court merely noted:  "RedHawk fails to address this issue."

The district court abused its discretion by granting Schreiber's motion to enforce the settlement agreement.  After rejecting the argument Schreiber made in his opening brief on the motion, the district court based its decision granting his motion exclusively on the arguments and evidence presented for the first time in his reply brief.  It never gave RedHawk a full opportunity to counter Schreiber's new arguments and then faulted RedHawk for its failure to do so.  True, Schreiber attached RedHawk's 2019 Annual Report to its original brief, and, yes, RedHawk's response suspected that Schreiber might raise new arguments in a reply.  But, as its name suggests, the purpose of a response brief is to respond to the arguments made by the opposing party in its opening brief, not to rebut new arguments that party could conceivably make in its reply.  Nor would it have been reasonable for the district court to expect RedHawk to explain how every other transaction listed in its 61-page Annual Report fails to trigger the acceleration provision, particularly when Schreiber specifically relied on only one in his opening brief.  Therefore, because the district court denied RedHawk the opportunity to file a surreply to Schreiber's reply brief that presented new arguments and evidence—and

then relied solely on those new arguments and evidence as the basis of its order—it abused its discretion. *Austin*, 864 F.3d at 336.

## V.

RedHawk asks us to go one step further by vacating the district court's order and issuing a mandate denying Schreiber's motion to enforce because it owes Schreiber "nothing" under the settlement agreement. It contends that the district court already properly rejected Schreiber's initial argument centered on the September 16, 2019, transactions—thus providing no basis for default—and that the new arguments and evidence the district court relied on in its order stem from a misinterpretation of the settlement agreement and erroneous factual findings. RedHawk notes that these alleged mistakes result from the district court's refusal to allow RedHawk to rebut Schreiber's reply.

It is often said that we are a court of review, not a court of first view. In that spirit, we conclude that it is more appropriate at this juncture to remand to the district court to reconsider the motion after permitting RedHawk to file a surreply responding to Schreiber's new contentions. *See, e.g.*, *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (reversing grant of summary judgment and remanding to the district court "to respond and offer additional argument and evidence" to arguments made in a reply brief).

## VI.

For the foregoing reasons, we VACATE the district court's order granting enforcement of the settlement agreement and REMAND for proceedings consistent with this opinion.